IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

KWABENA MAWULAWDE, M.D.                    )
                                           )
          Plaintiff,                       )
                                           )
     vs.                                   )  CIVIL ACTION
                                           )  FILE NO. 1:05-CV-99
BOARD OF REGENTS OF THE UNIVERSITY SYSTEM  )
OF GEORGIA; MEDICAL COLLEGE OF GEORGIA;    )
DANIEL W. RAHN, M.D., Indiv. and in his Official Capacity as )
President, Medical College of Georgia; DAVID STERN, MD., )
Indiv., and in his Official Capacity as Dean, School of Medicine, )
Medical College of Georgia; and DON SNELL, Indiv. and in his )
Official Capacity as President and CEO, MCG Health, Inc., )
                                           )
          Defendants.                      )
_____  )

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES
TO INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND
RESPONSES TO DEPOSITION QUESTIONS**

**I. INTRODUCTION**

COMES NOW, Plaintiff Kwabena Mawulawde, M.D, through counsel and pursuant to Rule

37 of the Federal Rules of Civil Procedure, files this Motion to Compel Discovery Responses to

Interrogatories, Requests for Production of Documents and Answers to Deposition Questions. A

certificate of good faith has been attached to this Motion to Compel as Exhibit 1.

Plaintiff's Complaint has alleged, among other things, that he was denied promotions and

that he was terminated from employment because of his African American race. In short, Plaintiff

has alleged that he was qualified and applied for the position of Chief of the Cardiothoracic Surgery

Department at the Medical College of Georgia (MCG), he was denied the position and that white

physician who possessed less knowledge and skill than he had demonstrated over the course of three

years, were hired and appointed to the position of Chief of the Cardiothoracic Surgery Department

at MCG. Plaintiff has further alleged that he was also terminated from his employment as a result

Q.    Isn't it true that the first off-pump surgery that you performed at the Medical College of Georgia was problematic?

A.    Well, surgery never goes as a breeze.  We always have –we always have–and I believe most good off-pump or minimally invasive surgeons always have plans and contingency arrangements so that whatever befalls and changes in the operating room you can address.  And so–

Q.    Okay.

A.    –so I don't view heart surgery as a breeze under any circumstances.

Q.    My question is: an off-pump procedure–the first off-pump procedure that you did here at the Medical College of Georgia was problematic.

    Ms. Heaton:  I just want to put an objection on the record–

A.    No. Not that I recall.

    Ms. Heaton:  –to the extent that your question seeks to have the witness reveal identifiable protected health information in violation of HIPAA.  As this witness' attorney I would instruct him not to answer question that would be a violation of HIPAA and reveal protected health information in that it could subject him to imprisonment and fines.

(Exhibit 11, pp 3-4)

Following that objection there was a discussion as to whether the question was inquiring

about any patient specifics, and whether the Defense Counsel was attempting to cue the witness, and

Ms. Heaton specifically stated, "I'm instructing him not to answer questions that would reveal

protected health information" (See, Exhibit 11, p 4 ).  Some additional unobjected to questions were

asked, then the following occurred:

Q.    Okay.  You are experienced.  In fact–and your testimony was, if I understand you correctly that there were no problems wit the first off-pump procedure that you performed at the Medical College of Georgia

A.    There are always problems in surgery.

Q.    Listen to me carefully.  I understand that.  My question was, again, were there problems that you encountered in performing that first off-pump procedure when you –at the Medical College of Georgia?  Yes or no.

    Mr. Ellington: Objection

    Ms. Heaton:  Objection on the grounds of HIPAA because you are asking him about a specific individual.  There is no protective order, there is no patient consent form and you have not provided notice to a patient with an opportunity to object to your requesting the witness to reveal protected health information.

Q.    [Mr. McGriff] Are you going to answer the question, Dr. Landolfo?

    Ms. Heaton:  I am instructing him not to answer the question.

    Mr. McGriff:  Let's certify this whole series of questions with respect to the attempt to prevent Dr. Landolfo from asking or respondent to factual information.  And please capture all the objectionable statements please

(Exhibit 11, pp 4-5)

The refusal of the defendants to fully and truthfully answer interrogatories, produce documents and information and the failure to answer depositions questions relying upon purported "peer review" privilege set out in O.C.G.A. 31-7-133, the medical review privilege set out in O.C.G.A. 31-7-141, and the alleged federal "self critical analysis privilege" is unwarranted in this **civil rights** case, and the defendants' reliance and assertion of such privileges under the facts hereof are nothing more than the Defendants' bad faith attempt to limit discovery and complicate this case, and to make it more expensive to the Plaintiff to gather evidence. Moreover, as can be seen from the above transcript excerpts and Exhibit 11 attached hereto, the refusal of Dr. Landolfo to respond based upon HIPAA objection was totally unwarranted, because no specific patient information was sought. Dr. Landolfo was promoted to a position for which the Plaintiff applied and was rejected. It was perfectly proper to make inquiries into his qualifications and performance records.

There is no justification at all for the stated privilege objections since to uphold them would deprive the Plaintiff of the opportunity to show the very discrimination which forms the basis for his claims. Defendants should be compelled to answer the interrogatories propounded, produce documents as requested and answer deposition questions fully and forthright. In support of Plaintiff's position, Plaintiff submits the attached Memorandum of Law in support of full disclosure of the information claimed to be protected by any such stated privilege. The varying positions offered by the defendant are not meritorious but are merely being made to frustrate the fair prosecution of the Plaintiff's case.

## V. **ARGUMENT AND CITATION OF AUTHORITIES**

### A. **Defendants' Assertions of Privilege are not Authorized or Warranted in this Federal Civil Rights Action**

#### (I) **Defendants' objections based upon O.C.G.A. §31-7-133 and §31-7-141**

As noted above, Defendants have objected to answering questions or producing certain documents about the comparative treatment of the Plaintiff and other similarly situated physicians in the Cardiothoracic surgery department of MCG, on the basis that such information is protected from discovery by Georgia's state created "peer review" privilege as set out in O.C.G.A. §31-7-133 , and the "medical review" privilege set out in O.C.G.A. §31-7-141 and the federal "self-critical analysis" privilege (not found in any federal statute).

The contours of permissible discovery in the federal courts, as described in Federal Rule of Civil Procedure 26(b)(1), provide that "Parties may obtain discovery regarding any matter not privileged, that is relevant to the claim or defense of any party. . . " Therefore, at the initial stages of a federal case, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted." See, Pearson v. Miller, 211 F.3d 57, 65 (3rd Cr. 2000). Cases in Georgia have recognized that assertions of evidentiary privileges in federal court such as the Defendants' assertions here, are governed by Federal Rule of Evidence 501, which provides:

> The privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law.

Fed. R. E. 501; See, Adeduntan v. Hospital Authority of Clark County, 2005 U.S. LEXIS 18281 (M.D. Ga. 2005)

Thus, Federal Rule of Evidence 501 requires the application of federal privilege law to the federal law claims and state privileges apply to substantive claims arising under state law. Courts

addressing if and when it is proper to apply state privilege law in cases arising under federal law have relied upon Federal Rule of Evidence 501 to conclude that the application of a state's privilege law to a federal case brought on the basis of a federal question is improper.  *See, e.g.*. Univ. of Pennsylvania v. E.E.O.C., 493 U.S. 182, 188-189 (1990) [noting that Federal Rule of Evidence 501 controls whether or not a federal court will recognize a privilege in a federal question case); Adeduntan v. Hosp. Auth of Clarke County, 2005 U.S. Dist. LEXIS 18281 (M.D. Ga. Aug. 25, 2005) [same]; Holland v. Muscatine Gen. Hosp. 971 F. Supp. 385, 388 (S.D. Iowa 1997) [same]; Johnson v. Nyack Hosp., 169 F.R.D. 550, 557 (S.D.N.Y. 1996); [same]; LeMasters v. Christ Hosp., 791 F. Supp 188, 189 (S.D. Ohio); Burrows v. Redbud Community Hosp. Dist., 187 F.R.D. 606, 610-611 (N.D. Ca. 1998).

"The Federal Rules of Evidence dictate that privileges asserted in federal question cases shall be governed by *federal* law, while state privilege law should apply to purely state claims brought in federal court pursuant to diversity jurisdiction. Fed.R.Evid. 501.  State claims that are pendent to federal question cases, however, are governed not by state law but by federal privilege law." Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993); *see*, Scott v. McDonald, 70 F.R.D. 568 (N.D. Ga 1976).

In Pagano, *supra*, the Court noted: "To prove this [discrimination] allegation, plaintiff must present evidence that other physicians with comparable or worse records than his were not denied staff privileges.  Such evidence, if it exists, would likely be found in the Hospital's records of disciplinary proceedings against other doctors. To deny plaintiff access to this information may very well prevent him from bringing his action altogether." (Citations Omitted.)  *Id.*, at p. 691.

Of course, it has been recognized that the aforesaid State privilege statutes were enacted to protect the public interest of correcting deficiencies in the delivery of medical care even though said protection might prejudice individual plaintiffs in *professional malpractice actions.  See*, Marshall

v. Americus-Sumter County Hospital Authority, 2002 U.S. Dist. LEXIS 26822 (M.D. Ga 2002).

O.C.G.A. § 31-7-133 and 31-7-143 were enacted to establish a privilege from discovery or use as

evidence in medical negligence civil litigation against a provider of professional health services

arising out of the proceedings of peer review organizations and medical review committees, and to

provide immunity to participants and witnesses in such proceedings. Federal courts strictly construe

privilege exclusions because privileges contravene the fundamental principle that "the public has a

right to every man's evidence." Tramel v. United States, 445 U.S. 40, 50 (1980); see also,

University of Pennsylvania v. E.E.O.C., 493 U.S. 182, 189 (1990) [noting that the Court is

disinclined to exercise the authority to develop rules of privilege expansively]. Courts recognize a

privilege only to the very limited extent that "'excluding relevant evidence has a public good

transcending the normally predominant principle of utilizing all rational means for ascertaining

truth.'" Id., quoting Elkins v. United States, 364 U.S. 206, 234 (1960). Federal Courts have

distinguished the protection afforded the "peer review" information or documents in professional

malpractice cases from the need for such information and discovery in Civil Rights actions such as

the instant case. In Sonnino v. University of Kansas Hospital Authority, et al., 220 F.R.D. 633, 644-

645 (D. Kan., 2004), the district court held that, "[t]his is a civil rights and discrimination action

brought pursuant to 42 U.S.C. §§ 1983 and 1985. As these claims are all brought pursuant to federal

law, the Court must decide this privilege issue by applying the privileges of federal common law.

. . . Neither the Supreme Court nor the Tenth Circuit has recognized a medical peer review or

medical risk management privilege under federal common law. . . . As the district court in Mattice

v. Memorial Hospital of South Bend [203 F.R.D. 381 (N.D. Ind. 2001)] noted, 'nearly all of the cases

that have weighed the state-law medical peer review privilege against the interests advanced by the

federal anti-discrimination laws have concluded that the privilege does not preclude discovery of

peer review materials.'" (Citations and Footnotes Omitted.) (emphasis added).

The district court in <u>Sonnino</u> further held that, "[t]he Court finds that the reasoning presented in these cases persuasive, and the Court agrees with the conclusions of these cases that the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review or risk management materials. As in this case, the plaintiffs in the above-cited discrimination cases argued that the discovery was relevant to show that they were treated differently in the peer review process than other similarly situated physician. "It is difficult to perceive how Plaintiff can be expected to argue and prove those disparate treatment claims case[s] without access to the type of review and decision-making processes undertaken in comparable situations." <u>Id.</u>

To the extent that the defendants are withholding documents to allegedly protect the privacy and other confidentiality interests and/or the identities of persons involved, discussed, evaluated, and/or revealed in peer review documents, a confidentiality protective order substantially similar to the one entered by the Court in <u>Marshall v. Americus-Sumter County Hospital Authority, et al.</u>, *supra,* may be utilized to protect such interests. As noted by the district court in <u>Rdzanek v. Hosp. Serv. Dist. #3</u>, 2003 U.S. Dist. LEXIS 19336, (E.D. La 2003), "[t]he protective order limits the use of the information to this litigation. The Court finds that the importance of protecting peer review information to any greater extent than that provided by the protective order is outweighed by the truth seeking function of the federal courts."

In the <u>Marshall</u> case, cited previously, the District Court for the Middle District of Georgia evaluated a discrimination claim brought by a black physician who claimed the suspension of his medical privileges was motivated by race. The Plaintiff faced the very same stonewall objections as have been raised here to withhold discovery-- that being "medical peer review." In that case, the District Court engaged in an analysis of the aforesaid state statutes, Federal Rule of Evidence 501,

-12-

and the immunities found under the *Health Care Quality Improvement Act* (HCQIA) and concluded the peer review privilege was not applicable. The interest in facilitating the eradication of discrimination outweighed the interest in promoting candor in the medical peer review process. The Court in Marshall noted that the Eleventh Circuit had not directly addressed whether peer review information is discoverable in a civil rights suit, but gave great weight to a ruling from the Fourth Circuit which had addressed the issue. See, Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001). The Court stated it found "the reasoning of the Fourth Circuit both reasonable and persuasive and therefore believe[d] that the Eleventh Circuit would closely follow the reasoning of that court." In fact, on January 6, 2003, the Eleventh Circuit Court of Appeals denied the defendants' petition for writ of mandamus filed in that court, seeking reversal of the discovery Order entered in the Marshall case.

In Virmani, the Fourth Circuit affirmed the district court's order allowing discovery of peer review documents of similarly situated physicians covering fifteen (15) years. Other district courts subsequent to the ruling in Virmani, have found its reasoning both reasonable and persuasive.[1] *See* Holland v. Muscatine General Hospital, 971 F.Supp. 385, 389 (S.D. Iowa 1997), whereby that court said that "The Court does not believe either that a federal peer review privilege, or Iowa's peer review privilege, should be recognized to prevent disclosure of documents and information which have a close degree of relevance to a hospital's knowledge and investigation of the conduct of

---

[1] For example, even though it did not involve a discrimination claim, the United District Court for the Southern District of California cited Virmani in Crowe v. County of San Diego, et al., 242 F.Supp.2d 740, 749 (S.D. Cal. 2003). The court in Crowe indicated that, "[t]he relevant inquiry is whether a plaintiff asserting a § 1983 defamation-plus claim has a state-created interest, the denial of which violates the Fourteenth Amendment Due Process Clause. Where the issue is whether the plaintiff has suffered a denial of his or her rights under the Fourteenth Amendment Due Process Clause, state law clearly does not provide the rule of decision even though state law might be consulted in determining whether the plaintiff has an interest that is protected by the Fourteenth Amendment." Crowe, *supra*, at 749.

physicians which has allegedly resulted in employment discrimination in violation of federal law. *Disclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objective of promoting quality health care served by the peer review privilege.*" Holland v. Muscatine General Hospital, 971 F.Supp. 385, 389 (S.D. Iowa 1997).[emphasis added]. "The adequacy of peer review investigation itself is in issue. If the asserted privilege walls this information off from discovery, it becomes a direct impediment to the vindication of important federal substantive rights." (Citations Omitted.) Id. at p. 390.

Furthermore, "[n]othing in the relevant provisions of the HCQIA suggests Congress intended to encourage employment discrimination claims involving physicians be investigated through the peer review process, or intended to cloak such investigations with confidentiality. To the contrary, the statutory immunity of persons participating in professional review actions -specifically does not include 'damages under any law of the United States or any State relating to the civil rights of any person or persons, including the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This exception is a fairly clear indication that the HCQIA is not intended to interfere with the prosecution of civil rights actions." (*Citations Omitted.*) Id., at p. 390. The HCQIA does not support privilege in a Civil Rights case, "The [HCQIA] Act . . . infers support of disclosure when the very legitimacy of a medical peer review committee proceeding is at issue." Id., at 693.

"The present action is brought under Title VII of the Civil Rights Act of 1964 and thus it is not one to which 'State law supplies the rule of decision.' Rule 501 implies that the . . . confidentiality statute does not control the result of this action. On that basis several courts have held that state confidentiality statutes were inapplicable in situations analogous to the present one." EEOC v. St. Louis Dev. Disabilities Treatment Center, 118 F.R.D. 484, 487 (E.D.Mo. 1987).

In the Georgia Adeduntan case mentioned earlier, the Court recognized that while the peer

-14-

review privilege has been upheld in a few cases within the Eleventh Circuit, those cases are distinguishable (as they are in the present case) on the basis that they did not involve the HCQIA immunity defense, nor did they involve federal civil rights claims. Adenduntan v. Hospital Authority of Clarke County, 2005 U.S. Dist. LEXIS 18281 (August 25, 2005), citing, Somer v. Johnson, 704 F.2d 1473, 1479 (11th Cir 1983)(upholding privilege in a diversity medical malpractice action); Doe v. UNUM Life Ins. Co. of Am., 891 F. Supp 607, 609 (N.D. Ga. 1995) (upholding privilege under Ga law where insurance company sought information regarding a physician's suspended privileges due to alleged drug abuse). Adeduntan recognized that there is no Eleventh Circuit case addressing the application of the peer review privilege in a federal question case, particularly in a case involving the HCQIA immunity defense or civil rights claims of discrimination such as we have here.  As noted earlier, the peer review privilege was rejected by the Fourth Circuit in Virani, supra, and also the privilege was rejected by the Seventh Circuit in Memorial Hosp. v. Shadur, 664 F.2d 1058, 1063 (7th Cir 1981) (per curium).  Moreover, Congress in enacting the HCQIA and providing immunity from civil damages to individuals who participate in medical peer review proceedings, specifically excluded immunity from suits brought for violations of civil rights. 42 U.S.C. § 11111(a)(1).  Thus, since the need for probative evidence of discrimination outweighs the interests protected by the asserted privilege in this Civil Rights action,  this Court should find that the state created privileges set forth in O.C.G.A. §31-7-133 and §31-7-143 are not applicable here.

### (ii) Defendants' Claim of Privilege on the Basis of Self-Critical Analysis.

The asserted privilege of "self-critical analysis" is directed at protecting certain critical self appraisals.  The rationale for the doctrine is that such self-critical evaluation fosters the compelling public interest in the observance of the law. See, Granger v. National R.R. Passenger Corp., 116 F.R.D. 507, 508 (E.D. Pa 1987).  The protection offered under this theory is similar to the Georgia

statutory peer review or medical review privilege, but like the State statutory peer review privileges,

the Eleventh Circuit has not recognized the viability of "self critical analysis" as a bar to discovery,

[see, Adenduntan v Hospital Authority of Clarke County, 2005 U.S. Dist. LEXIS 18281 (August 25,

2005)]; and it has been recognized that as a matter of federal common law, the self critical analysis

privilege does not exist. Id.; *also see*, Granberry v. Jet Blue Airways, 228 F.r.D. 647, 649 (N.D.CA

2005); (cases cited.)

    For a discussion of the self-critical analysis privilege as it relates to circumstances similar

to this case, see Nilvar v. Mercy Health Sys., 210 F.R.D. 597, 604 at fn12 (2002), wherein "[t]he

Court notes that while some cases discuss a 'self-critical analysis' privilege, and others discuss a

'peer review' privilege, the two concepts stem from the same trunk. Some courts note a distinction

between the two; others do not. The 'self-critical analysis' is merely a way of describing, for

example, a hospital's regular review, or evaluation, of its own in-house practices, and the work of

its care givers. It is, in other words, a more broadly focused, or generalized, variant of peer review,

which itself tends to be case-specific." (Citations Omitted.)

    In refusing to recognize the applicability of the self-critical analysis privilege in the context

of an employment discrimination case, the Granberry decision, *supra*, contains some particularly

relevant language, wherein the Court stated:

> Moreover, the nonexistence of the privilege is particularly evident in cases
> involving an employment discrimination claim under Title VII, . . . While "'[a]
> fair number of district courts have recognized the privilege in the context of
> employment discrimination, . . . an equal or greater number have either
> categorically denied the existence of a "self critical analysis" privilege or have
> rejected its application as to particular documents.'" Johnson v. United Parcel
> Serv., Inc., 206 F.R.D. 686,689 (M.D. Fla. 2002). Furthermore, "no circuit court
> of appeals has explicitly recognized the self critical analysis privilege." Id. at
> 689-90. Most important, the validity of the self-critical analysis privilege is
> highly doubtful in light of the Supreme Court's decision University of
> Pennsylvania v. E.E.O.C., 493 U.S. 182, 107 L.Ed. 2d 571, 110 S.Ct. 577 (1990),
> which declined to recognize a common law privilege against disclosure of

confidential peer review materials. "While the [Supreme] Court did not explicitly discuss the self-critical analysis privilege per se in University of Pennsylvania, it appears that the Court implicitly rejected the privilege in the context of Title VII employment discrimination claims." Johnson, 206 F.R.D. at 691.   The Court's analysis rejecting application of a peer review privilege or academic freedom compels the same result here.  Moreover, the fact that the common law privileges are to be "strictly construed," University of Penn., 493 U.S. at 189, and the fact that there is no "historical or statistical basis" for the privilege, see Id., at 195, further substantiate the conclusion that the privilege does not apply to employment discrimination litigation.

Granberry, supra 228 F.R.D. at p. 650-651

As recognized by one district court in the Eleventh Circuit, "no circuit court of appeals has explicitly recognized the self-critical analysis privilege." (Footnote Omitted.) Johnson v. United Parcel Service, Inc., 206 F.R.D. 686, 689-690 (M.D. Fla. 2002). In Johnson, the district court further held that, "until such time as the United States Supreme Court or the Eleventh Circuit Court of Appeals recognizes the self-critical analysis privilege, this Court is disinclined to recognize the privilege, at least in the context of employment discrimination." Id., at 693 (emphasis added). Therefore, the Defendants' assertion of such privilege is also meritless and cannot serve as a basis to withhold information sought by Plaintiff in discovery which is relevant to Plaintiff's federal discrimination claims.

Finally the burden is upon the party asserting the privilege to show its applicability.  Courts which have recognized the self-critical analysis privilege have established the following criteria: (1) the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public trust must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed; and (4) no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential. Freiermuch v. PPG Industries, Inc., 218 F.R.D. 694, 698 (N.D. Ala 2003). As far as Plaintiff is aware, Defendant can meet none of the aforesaid criteria.

Thus, Defendant's objections to answering deposition question or producing documents based upon the self-critical analysis objection in this case should be overruled and Defendants should be compelled to respond.

### (iii)    Defendant Landolfo's refusal to Answer a General Medical Care Question was unwarranted

As noted previously during the course of Dr. Landolfo's deposition he was asked if his first off-pump heart procedure was problematic. There were objections base upon the Health Insurance Portability and Accountability Act (HIPAA), and the witness was directed not to answer the question. (See, Exhibit 11, pp3-5). This objection was pursued, even though the Plaintiff's attorney did not attempt to elicit any details about the particular patient, but instead was simply focused upon Dr. Landolfo's own qualifications to be Chief of the Cardiothorascic Section at MCG. Of course when Congress adopted HIPAA in 1996, it indicated its intent to improve the efficiency and effectiveness of the national health care system and legislation was adopted to in recognition that advancements in technology increased the threat to patient privacy. 104 P.L 191 § 261. Congress included provisions in HIPAA mandating the adoption of federal privacy protections for individually identifiable health information. *Id.* While the Department of Health and Human Services drafted regulations entitled "Standards for Privacy of Individually identifiable Health Information (known as the Privacy Rule- [45 C.F.R. part 160 (2000)] which became effective April 14, 2001, those regulations on their face appear not to be applicable to general inquiries about a physician's experiences which do not identify specific patients or which do not appear likely to reveal confidential information about a patient. Otherwise, to follow the Plaintiff's rationale, no attorney could ask a physician about any aspect of any procedures in which he participated.. While there may be circumstances where a confidentiality order is required, the questions propounded bo Dr. Landolfo as indicated on pages 3-5 of Exhibit 11, do not appear to be such a situation.

## B. Defendants should be compelled to respond to Plaintiff's Interrogatories

As noted previously Defendant MCG Health, Inc. chose to renumber the Plaintiff's interrogatories, which contain subparts that are logically or factually related and relevant to each of the primary questions. Thus, said Defendant has objected to responding to any of the interrogatories beyond Plaintiff's enumerated interrogatory No. 7 (designated as Interrogatory No. 25 by Defendant).

The discussion and analysis of the issue presented by the Defendant's objection must start with a reference to Federal Rule of Civil Procedure 33(a) which states in relevant part

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served. . . .
>
> F.R.C.P 33(a)

The numerical limit was added in 1993. The notes of the Advisory Committee for the 1993 amendments recite that "The purpose of this revision is to reduce the frequency and increase the efficiency of interrogatory practice." Regarding the references to the 25 interrogatory limitation and "discrete subparts," the advisory notes state only that "Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present and contents be stated separately for each such communication." *See*, 1993 Advisory Committee Note to F.R.C.P. 33.

Unfortunately, the aforesaid leaves to interpretation the issues of what are "discrete subparts," and what are subparts which are considered so intertwined with or closely related to the primary question, that they should logically be deemed to be a part of the same interrogatory. The aim of the 25-interrogatory limit, and the requirement that a motion be filed to exceed said limit, is not to

-19-

prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive

use of the discovery device.  1993 Advisory Committee Note to F.R.C.P 33.

It has been recognized that the term "discrete subparts" refers to those subparts that should

in fact be considered "separate."  The Merriam-Webster Online Dictionary defines the term

"**discrete**" as "1. constituting a separate entity: individually distinct or 2. consisting of distinct or

unconnected elements."  Some Courts have examined the issue relating to distinguishing between

separate and discrete subparts and those which should be considered a part of the same interrogatory,

and have attempted to balance the competing interests of protecting against abusive discovery

practices and permitting a party full exploration of logically related subjects. See e.g., Safeco of

America v. Rawstron, 181 F.r.D. 441 (C.D. Ca 1998); Ginn v. Gemini, Inc. 137 F.R.D. 320 (D.Nev

1991); Kendall v. Ges Exposition Services, Inc., 174 F.R.D. 684 (D. Nev. 1997); Trevino v. ACB

American, Inc. 2006 U.S. Dist. LEXIS 3194 (N.D.Ca Jan. 27, 2006).  The general test seems to be

that interrogatory subparts are to be counted as part of but one interrogatory for the purpose of Rule

33 (a) "if they are logically or factually subsumed within and necessarily related to the primary

question."  Ginn, 137 F.R.D. at p. 322;  Kendall, 174 F.R.D. at p. 685.

In Wright's "*Federal Practice and Procedure*," the author has elaborated on the aforesaid

advisory committee notes concerning the limitation and subpart language of Rule 33 by stating

> It would appear that an interrogatory containing subparts directed at eliciting
> details concerning the common theme should be considered a single question,
> although the breadth of an area inquired about may be disputable.  On the
> other hand, an interrogatory with subparts inquiring into discrete areas is
> more likely to be counted as more than one for the purposes of the limitation.

8A Charles A. Wright, Arther R. Miller & Richard l. Marcus, *Federal Practice and Procedure* §
2168.1, at 261 (2nd Ed. 1994); *See*, Safeco, 181 F.R.D. at p. 444

Unfortunately, as has been recognized in the Safeco case *supra*, there is no "bright line" test

as to whether subparts are to be considered separate or whether the subparts are logically or factually

subsumed within and necessarily related to the primary question. Referring to the approach utilized in the Kendall case, *supra*, the Safeco Court went on to quote:

> "'Probably the best test of whether subsequent question, within a single interrogatory are subsumed and related, is to examine whether the first question is primary and the subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, not withstanding [that] they are joined by a conjunctive word and may be related.'"

Safeco, *supra* at p. 445, citing Kendall, *supra* at p. 685.

Thus, an examination of each interrogatory must occur, and Plaintiff submits that the examination should be made in the context and with the backdrop of this being a Civil Rights case, alleging employment discrimination based upon race. It has been recognized that discrimination is often subtle and proof of direct evidence will often be unavailable or difficult to acquire. "An employer who intentionally discriminates is unlikely to leave a written record of his illegal motive, and may not tell anyone about it. There will seldom be 'eyewitness' testimony as to the employer's mental processes.'(case cited) . . . Because of those realities, plaintiffs are often obligated to build their cases entirely around circumstantial evidence." Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1537 (11th Cir. 1997). The scope of permissible discovery is especially broad in employment discrimination cases where Plaintiffs often rely upon circumstantial or inferential proof to show that they suffered discrimination and that the legitimate nondiscriminatory reasons upon which an employer relies to justify its actions are pretextual. See, Panola Land Buyers Assoc., v. Schuman, 762 F.2d 1550, 1560 (11th Cir. 1985) [". . . a Plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim"); See also, Sweat v. Miller Brewing Co., 708 F.2d 655, 658 (11th Cir 1983).

In drafting the specific interrogatories submitted to Defendant MCG Health, Inc. Plaintiff attempted to follow the guidelines listed above so that any subparts of specific interrogatories are subparts simply eliciting details concerning a common theme. The subparts are in fact logically or factually subsumed within and necessarily related to the primary question. For example, the Defendant has broken Plaintiff's First Interrogatory into five (5) separate questions. The initial question relates to a request to describe the manner in which office space was allocated to physicians within MCG and with respect to said allocation, Plaintiff sought (1) the reasons that the space was assigned to particular physicians; (2) the name and department of each person responsible for allocation of the office spaces; (3) the names and titles of persons entitled to have office space (4) the identification of written policies and procedures which touch upon or address how the office space was allocated and (4) identification of charts, lists or memos or other writings that detail where each physician was assigned to an office and (5) the identity of persons having custody and control of documents referenced or referred to in response to said interrogatory. All of the aforesaid subparts relate to the assignment of office space at MCG, and simply request details as to how, who, and what policies governed the allocation of such space, and where and who had documents relating to same. All of these questions are secondary to the first inquiry and fit within the example or guideline provided in the 1993 Advisory Committee Note for FRCP 33(a) stated above.

Another example is Plaintiff's Interrogatory No. 3 and its subparts which were broken into 4 separate interrogatories by the Defendant. (Defendants' designated Responses to "Interrogatories Ten through Thirteen"). All of the subparts of Plaintiff's Interrogatory No 3 relate to the office space in the cardiothoracic department at MCG, (the amount of space, the name of persons assigned to particular spaces, the names and job titles of persons responsible for the assignment, identity of documents or memos relating to the assignments and identity of persons having those documents). Again the interrogatory as a whole simply relates to obtaining information as to what space, how,

who, and the identity of persons and documents which related to the assignment of office space. All questions related basically to the same subject matter and followed the same theme relating to assignment of office space.

Another example: Plaintiff's Interrogatory No. 5 and its subparts were broken into three separate interrogatories by Defendant (Defendant's designated Responses Seventeen, Eighteen and Nineteen). This Plaintiff's Interrogatory No. 5 and its subparts all relate to any offices referred to in the preceding responses to Interrogatories 1 through 4, and requested detail regarding any such spaces which were identified for particular physicians and the dates the offices were occupied. As a follow up, the subparts © and (d) simply requested identification of documents relating to those identified office spaces for particular physicians and who had possession of that documentation. Again Plaintiff submits all the questions were rationally related and logically should not have been considered separate questions.

A review of all of the questions separated out by the Defendant reveals similar rational relationships for the subparts of each interrogatory. As noted previously, there is no bright line test. Certainly the interrogatories as presented to the Defendant do not threaten the purpose of the rule by combining questions which should be considered alone. The inquiries are not oppressive. Since each of the subparts of each of the Plaintiff's separate interrogatories are interrelated, and are in fact logically or factually subsumed within and necessarily related to the primary question presented for each such enumerated interrogatory, the Defendant should be compelled to respond to said subparts.

### VI.  PLAINTIFF'S SPECIFIC REQUESTS FOR PRODUCTION AND DEFENDANT'S OBJECTIONS THERETO.

Defendant MCG Health, Inc. has objected to a large number of Plaintiff's First Requests for Production as indicated below. Said requests and responses as to which the Plaintiff seeks an order compelling discovery are as follows:

**REQUEST NO. 5**    Please produce each and every employment contract, pay stub, letter, memo, acceptance letter, termination letter and  any other document relating to Dr. Kwabena Mawulawde's employment in any capacity in any department while at the Medical College of Georgia.

**Response:**   MCG Health objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.

In further response, MCG Health states that it dos not have documents of the type sought by this request for production in its possession or custody, other than the documents which may be contained in Dr. Mawulawde's credentialing file, which is subject to the privileges asserted above as indicated in MCG Health's Privilege Log, produced in conjunction with these Responses.

**Plaintiff's Argument**:  Plaintiff's position is that for the reasons set forth in its general argument above pertaining to "peer review" or "medical review committee privilege" or "self-critical analysis privilege" the requested documents should be produced.  This is a Civil Rights case relating to racial discrimination and employment, and the rationale for withholding discovery under the stated privileges is not applicable.  (*See Arguments and Citation of Authority, above*).  To the extent Defendant has the requested documents, they should be produced.

**REQUEST NO. 6**:    Please produce each and every employment contract, pay stub, letter, memo, acceptance letter, termination letter and  any other document that depicts Dr. Kevin Landolfo's employment in any capacity in any department while at the Medical College of Georgia.

**Defendant's Response:** MCG Health objects to this request for production to the extent that

-24-

it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and MCG Health further objects on this ground.

Subject to and without waiving this objection, MCG Health states that documents responsive to Request for Production numbered 6 have been previously produced to the plaintiff in response to the Plaintiff's Request for Production of Documents to Defendant Don Snell numbered 30 through 36. Apart from these documents, there are no documents responsive to Request for Production numbered 6 in the possession or custody of MCG Health.

**Plaintiff's Argument**: Plaintiff's position is that for the reasons set forth in its general argument above pertaining to "peer review" or "medical review committee privilege" or "self-critical analysis privilege" the requested documents should be produced. This is a Civil Rights case relating to racial discrimination and employment, and the rationale for withholding discovery under the stated privileges is not applicable. (*See Arguments and Citation of Authority, above*). To the extent Defendant has the requested documents they should be produced.

**REQUEST NO. 7**: **Please produce each and every employment contract, pay stub, letter, memo, acceptance letter, termination letter and any other document that depicts Dr. Mark Anstadt's employment in any capacity in any department while at the Medical College of Georgia.**

**Defendant's Response:** MCG Health objects to this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and overbroad

as to time because HMC health only began operating the hospitals and clinics of the Medical College of Georgia on July 1, 2000. Prior to July 1, 2000, MCG Health did not operate the hospitals and clinics of the Medical College of Georgia.

MCG Health further objects to this for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

In further response, MCG Health states that it does not have documents of the type sought by this request for production in its possession or custody, other than the documents which may be contained in Dr. Adstadt's credentialing file, which is subject to the privileges asserted above as indicated in MCG Health's Privilege Log, produced in conjunction with these Responses.

**Plaintiff's Argument**: Plaintiff adopts by this reference the same arguments he has made in response to the Defendant's objection to responding to Request for Production No. 6 above.

Pertaining to the remainder of the Defendant's objections, the fact that MCG Health, Inc. did not operate the hospitals and clinics of the Medical College of Georgia prior to July 1, 2000 is not relevant to the discovery in a case such as this one where Plaintiff is claiming disparate treatment on behalf of MCG as well as this Defendant and MGC is still in this case, through the claims against the Board of Regents. Evidence of historical conduct by the allegedly discriminatory entity can be "of significant evidentiary value in discrimination cases."Williams v. City of Dothan, 745 F.2d 1406, 1415 (11th Cir. 1984) (citations omitted).[vacating a protective order denying access to past information]. Even evidence of earlier discriminatory conduct that is time-barred is "entirely appropriate to help prove a timely claim based on a subsequent discriminatory conduct." Mattewson

v. National Automatic Tool., 807 F.2d 87, 91 (7th Cir. 1986); see also, Trevino v. Celanese Corp,

701 F.2d 397,405 (5th Cir. 1983); Cormier v. PPG Industries, 452 F. Supp. 594, 595 (W.D. La.

1978). It is well within the Court's discretion to allow what it deems a reasonable time frame for

discovery of a defendant employer's practices. See, Robbins v. Camden City Bd. of Ed., 104 F.R.D.

49, 55 (D.N.J. 1985); Finch v. Hercules, Inc., 149 F.R.D. 60, 64 (D. Del. 1993). "The need to

develop all relevant facts in the adversary system is both fundamental and comprehensive. . . "

United States v. Nixon, 418 U.S. 683, 709 (1974). Full discovery is favored whenever possible. See,

e.g. Farnsworth v. Proctor & Gamble Co,, 758 F.2d 1545, 1546-47 (11th Cir. 1985). As previously

discussed, a plaintiff asserting claims involving remedial anti-discrimination statutes such as Title

VII and 42 U.S.C. § 1983 should be allowed ample discovery regarding alleged violations of the

Plaintiff's guaranteed rights. Further more, the present case involves issues specially implicating the

public interest as Plaintiff's former employer is a public entity associated with the University of

Georgia, and for over 50 years, this Country's courts and legislatures have endeavored to eradicate

racial discrimination in public institutions, e.g., Brown v. Board of Education 347 U.S. 483 (1954);

Hart v. Community School Board, 512 F. 2d 37 (2nd Cir. 1975). Plaintiff respectfully asserts that

this Court should provide some broad leeway in permitting Plaintiff to obtain documents which may

show a history or pattern and practice of discrimination even though it may not technically apply to

MCG Health, Inc. so long as there may be some relevance or connection to the Board of Regents

and MCG.

**REQUEST NO. 8**:    Please produce each and every employment contract, pay stub,

letter, memo, acceptance letter, termination letter and any other document that depicts Dr.

Lionel Zumbro, Jr.'s employment in any capacity in any department while at the Medical

College of Georgia.

**Defendant's Response:** MCG Health objects to this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and overbroad and unduly burdensome for the reasons described more fully in MCG health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

In further response MCG health states that it does not have documents of the type sought by this request for production in its possession or custody, other than the documents which may be contained in Dr. Zumbro's credentialing file, which is subject to the privileges asserted above as indicated in MCG Health's Privilege Log, produced in conjunction with these Responses.

**Plaintiffs Argument:** For the reasons set forth in its general argument above pertaining to "peer review" or "medical review committee privilege" or "self-critical analysis privilege," Plaintiff submits that Defendant's arguments regarding those privileges should be overruled, and the requested documents should be produced. This is a Civil Rights case relating to racial discrimination and employment, and the rationale for withholding discovery under the stated privileges is not applicable. (*See Arguments and Citation of Authority, above*). To the extent Defendants have the requested documents, they should be produced.

Pertaining to the Defendants' arguments adopted from its Responses to Interrogatories 2(a), 2(b) and 2©, [that it only began operating the hospital and clinics of the MCG on July 1, 2000],

-28-

Plaintiff adopts by reference its above responsive argument to the objection to Request to Produce No. 7 above. The remainder of the objections adopted by reference to interrogatory 2(a), 2(b) and 2(c) are not relevant to this request for production.

**REQUEST NO. 12**: **Please produce documentation of each and every physician, medical personnel and/or administrative personnel who assisted Dr. Mark Anstadt in performing each and every surgical procedure including each and every patient name, date of surgery, and type of surgery and any other document or thing that you used to respond to Interrogatory No. 20.**

**Defendant's Response:** MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2(c).

MCG Health further objects to this request for production on the grounds that it is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome in that Dr. Anstadt treated hundreds of patients at the hospitals and clinics of the Medical College of Georgia and a response to this interrogatory as stated would require an individualized review of each and every medical record for each of those patients.

MCG Health further objects in this request for production to the extent that it seeks protected health information as defined by 45 C.F.R. § 160, 103 under the terms of the Health Insurance Portability and Accountability Act of 1986 ("HIPAA"), which may only be produced subject to the entry of a qualified protective order as described by 45 C.F.R. § 164.152(e)(l)(v).

**Plaintiff's Argument**: In response to Defendant's first stated objection in the first paragraph

above, Plaintiff adopts its previous argument to a similar objection set forth under his response to the objections to request for production No. 7 above and No. 8.

The requested information is relevant, and not overbroad because the Plaintiff is claiming here that he was subjected to disparate treatment and not promoted because of his race, when his surgical skills were much more proficient and greater than those of Dr. Anstadt. The information requested will lead to witnesses who can verify that claim, and can verify that Dr. Anstadt's qualifications were substantially below that of the Plaintiff.

Finally, Plaintiff has no objection to entering into a qualified protective order as may be required by HIPAA.

**REQUEST NO. 14:  Please produce a detailed report including any and all letters, correspondence, notes, memorandum, written policies and procedures, and writings of any kind to and from anyone associated with the Medical College of Georgia that provide details regarding the mortality rate in the thoracic surgery department at the Medical College of Georgia.**

**Defendant's Response**: MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2(c).

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not

-30-

reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

Documents in MCG Health's possession or custody to which these privileges apply are indicated in MCG Health's Privilege Log produced in conjunction with this response.

**Plaintiff's Argument**: In response to Defendant's first stated objection in the first paragraph above, Plaintiff adopts its previous argument to a similar objection set forth under his response to the objections to request for production No. 7 above and No. 8.  In response to Defendant's second objection regarding privilege, Plaintiff adopts its previous arguments in the aforesaid "Argument and Citation of Authority" as to why the cited State privileges are not applicable in this type case.

The requested information is relevant, and not overbroad because the Plaintiff is claiming here that he was subjected to disparate treatment and not promoted because of his race, when his surgical skills were much more proficient and greater than other doctors who were promoted before him.  During his deposition, when Mr. Don Snell was asked about the Plaintiff's own medical abilities as a surgeon in the Cardiothoracic Surgery Department at MCG, deponent Don Snell stated "that the performance of the Cardiothoracic Surgery Department at MCG, of which the Plaintiff was a cardiothoracic surgeon and faculty member, was below the national average."   When asked directly about the Plaintiff's performance as a cardiothoracic surgeon Defendant Snell evaded the question and further again referred to collective performance of the  Cardiothoracic Surgery Department at MCG as being  below the national average.  In seeking to inquire about the specific performance of the Plaintiff and other similarly situated cardiothoracic surgeons in the Cardiothoracic Surgery Department, defendant MCG and defendant Don Snell's counsel objected upon the basis of the "peer review privilege set out in <u>O.C.G.A.</u> 31-7-133, the medical review privilege set out in <u>O.C.G.A.</u> 31-7-141, and the federal "self critical analysis privilege" and further

directed the witness not to answer. (Exhibit 10. MCG Health, Inc., Depo. pg.12). The requested information relates to Mr. Snell's testimony at his deposition and the alleged criticisms of the Plaintiff's performance as part of the surgical team in the Cardiothoracic Surgery Department. Defendant's objections should be overruled and the requested documentation produced.

**REQUEST NO. 16**: **Please produce each and every evaluation of Dr. Mawulawde, Dr. Landolfo and Dr. Anstadt for each and every year in each and every capacity while named physicians worked for, associated with, or was affiliated with the Medical College of Georgia**.

**Defendant's Response**: MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2(c).

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

In further response MCG Health, states that it does not have documents of the type sought by this request for production in its possession or custody other than the documents which may be contained in the quality or credentialing files of Dr. Mawulawde, Dr. Landolfo and Dr. Anstadt. Such files are subject to the privileges asserted above indicated in MCG Health's Privilege Log, produced in conjunction with these Responses.

-32-

**Plaintiff's Argument**:   Plaintiff adopts by this reference the same arguments he has made in response to the Defendant's objection to responding to Request for Production No. 7. and 8. above as to Defendant's privilege objections and relating to its time restriction objection.  The requested documents pertaining to Dr. Andstat, Dr. Landolfo, and Dr. Mawulawde are imperative to the Plaintiff's case and quite relevant to the issues of racial and employment discrimination.  In response to Defendant's objection regarding privilege, Plaintiff adopts its previous arguments in the aforesaid "Argument and Citation of Authority" as to why the cited State privileges are not applicable in this type case.

**REQUEST NO. 18**:  **Please produce each and every surgical schedule including dates, times, patient names, reason for surgery, and age of patients of Dr. Mawulawde, Dr. Landolfo, and Dr. Anstadt while working for, associated with or affiliated with the Medical College of Georgia at any time.**

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2(c).

MCG Health further objects in this request for production to the extent that it seeks protected health information as defined by 45 C.F.R. § 160, 103 under the terms of the health Insurance Portability and Accountability Act of 1986 ("HIPPAA"), which may only be produced subject to the entry of a qualified protective order as described by 45 C.F.R. § 164.152(e)(l)(v).

MCG Health further objects on the grounds that such request is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for

-33-

the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**: Pertaining to the Defendants' arguments adopted from its Responses to Interrogatories 2(a), 2(b) and 2(c), [that it only began operating the hospital and clinics of the MCG on July 1, 2000], Plaintiff adopts by reference its above responsive argument to the objection to Request to Produce No. 7. above.  The remainder of the objections adopted by reference to interrogatory 2(a), 2(b) and 2(c) are not relevant to this request for production.   Plaintiff has no objection to entering into a qualified protective order as may be required by HIPAA

The requested documentation relating to surgical schedules, including dates, times, patient names, reasons for surgery, and age of patients of Dr. Mawulawde, Dr. Landolfo, and Dr. Anstadt while working for, associated with or affiliated with the Medical College of Georgia are relevant to the Plaintiff's discovery of the comparative surgical procedures performed by these three physicians in order to address potential arguments from the Defendants in this case that comparisons cannot be done as to these three physicians due to the individual idiosyncracies involved in each separate surgical procedure. The comparison between the proficiencies of the three named physicians is an integral part of the Plaintiff's claim of discrimination.

**REQUEST NO. 19**:  **Please produce any and all lists, each and every patient medical records and/or patient charts, to include any excerpts of patient medical records and/or patient charts of Dr. Mawulawde, Dr. Landolfo, and Dr. Mark Anstadt, wherein a patient was not properly treated and/or a death occurred during or after a surgical procedure, at the Medical College of Georgia or the Veterans Administration (VA) Hospital in Augusta, Georgia, to include the dates and times of death, patient names, reason for surgery, age of patients, and address at the time of the surgical procedure including each and every document used to**

respond to Interrogatory No. 17 and Interrogatory No. 20 (g).

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.  Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

MCG Health further objects to this request for production to the extent that it seeks protected health information as defined by 45 C.F.R. § 160, 103 under the terms of the health Insurance Portability and Accountability Act of 1986 ("HIPPAA"), which may only be produced subject to the entry of a qualified protective order as described by 45 C.F.R. § 164.152(e)(l)(v).

MCG Health further objects on the grounds that such request is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Arguments**:    Pertaining to the Defendants' arguments adopted from its Responses to Interrogatories 2(a), 2(b) and 2©, [that it only began operating the hospital and clinics of the MCG on July 1, 2000], Plaintiff adopts by reference its above responsive argument to the

-35-

objection to Request to Produce No. 7. above. The remainder of the objections adopted by reference to interrogatory 2(a), 2(b) and 2© are not relevant to this request for production.    Plaintiff has no objection to entering into a qualified protective order as may be required by HIPAA.    Plaintiff further adopts its argument set forth under Interrogatory 18 above, however, the requested documentation here is even more imperative, because it directly pertains to the deaths, and improper treatment by the physicians whose history and proficiency is at issue in this employment discrimination action.    In response to Defendant's objection regarding privilege, Plaintiff adopts its previous arguments in the aforesaid "Argument and Citation of Authority" as to why the cited State privileges are not applicable in this type case.

**REQUEST NO. 20**:    **Please produce each and every quality assurance report of Dr. Mawulawde, Dr. Landolfo, and Dr. Anstadt that was prepared at any time while named physicians worked for, associated with or were affiliated with the Medical College of Georgia and whether or not they had serious quality of care issues and received ratings of 3's, 4's, or 5's pursuant to any quality assurance system within the Medical College of Georgia and the Veterans Administration (VA) Hospital in Augusta, Georgia, and have had their medical staff privileges summarily suspended or formally terminated.**

**Defendant's Response**:    MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-

7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

MCG Health further objects to this request for production on the grounds that it is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, but rather is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

Documents in MCG Health's possession or custody to which these privileges apply are indicated in MCG Health's Privilege Log produced in conjunction with this response.

**Plaintiff's Arguments**:    Pertaining to the Defendants' arguments adopted from its Responses to Interrogatories 2(a), 2(b) and 2©, [that it only began operating the hospital and clinics of the MCG on July 1, 2000], Plaintiff adopts by reference its above responsive argument to the objection to Request to Produce No. 7. above. The remainder of the objections adopted by reference to interrogatory 2(a), 2(b) and 2© are not relevant to this request for production.   In response to Defendant's second objection regarding privilege, Plaintiff adopts its previous arguments in the aforesaid "Argument and Citation of Authority" as to why the cited State privileges are not applicable in this type case.

The requested documentation under this 20th request is relevant again on the issue of disparate treatment of the Plaintiff, and the comparative work histories of the named physicians is material and important to the Plaintiff's claims, and directly relates to whether the Plaintiff was denied promotional advancement and employment because of race. The requested documentation also is relevant to Plaintiff's rebuttal arguments which will be made to show that any

nondiscriminatory reasons set out by the Defendants are merely pretexts.

**REQUEST NO. 21:**  Please produce the following concerning Kevin Landolfo, M.D. and Mark Anstadt, M.D.: any and all copies of any and all peer review discussion notes, minutes or documents, credentials documents, utilization reports and documents, ad hoc peer review reports, Health Care Finance Administration (HCFA), Centers for Medicare & Medicaid Services (CMS), External or internal audit reports or Joint Commission on Hospital Accreditation of Healthcare Organizations (JCAHO) centennial reports of death, patient complaints, whether written, discussed or orally reported reduced to writings, any legal actions, written observations of the Board of Directors, officials, managers, and/or employees of the Medical College of Georgia and the Veterans Administration (VA) Hospital in Augusta, Georgia, due to any relationship and/or involvement with the Medical College of Georgia and the VA any committee writings, complaints and/or concerns that the named physicians and/or members of their staff have harmed and/or endangered patients at the Medical College of Georgia and that the named physicians have failed and refused to make and keep proper patient records and documents; have failed in making progress notes: have failed to properly diagnose, and medical staff members lacking the qualification and skill to diagnose diseases and injuries, improperly using surgical technicians in the operating room of the Medical College of Georgia; have had excessive infection rates; have had deaths of patients; have abandoned patients; and have practiced medicine below the standard of care as practiced by like physicians, including each and every document and thing used to respond to Interrogatory No. 26.

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such

request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

MCG Health further objects to this request for production on the grounds that it is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, but rather is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

Documents in MCG Health's possession or custody to which these privileges apply are indicated in MCG Health's Privilege Log produced in conjunction with this response.

**Plaintiff's Argument**: Plaintiff adopts for the purpose of this argument, the arguments previously set forth by Plaintiff in response to Defendant's objections to Requests for production 16, 19 and 20 above.

**REQUEST NO. 23:** **Please produce each and every lawsuit of any kind that has ever been filed against the Medical College of Georgia, MCG Health*Care*, and MCG Health, Inc., including all documents used to respond to Interrogatory No. 14 and Interrogatory No. 27.**

**Defendant's Response**: MCG Health objects to this request for production on the grounds that it is overbroad and unduly burdensome, that it seeks information that is not relevant and not

reasonably calculated to lead to the discovery of admissible evidence and that it is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:  Plaintiff seeks the requested documents which are relevant to the issue of pattern and practice of discrimination by the Defendants, prior incidents of discrimination, corrective measures which may have been implemented by Defendants, proficiency of the Cardiothoracic Surgery Department, and proficiency of the surgeons working for Defendants. Defendant's objection is imposed to try to conceal relevant information.

**REQUEST NO. 24**:  **Please provide each and every deposition in the case of <u>Anstadt v. Medical College of Georgia</u> and depositions of any and all discrimination lawsuits of any kind that have ever been filed against the Medical College of Georgia, MCG Health*Care*, and MCG Health, Inc.**

**Defendant's Response**:  MCG Health objects to this request for production on the grounds that it is overbroad and unduly burdensome, that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and that it is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:  Plaintiff has attempted to obtain the requested depositions directly from the Court Reporter in the aforesaid case, but same would not be released by the court reporter without the permission of the opposing party in the stated case, and said permission was not forthcoming.  Plaintiff is seeking said documents to determine whether Dr. Anstadt has relevant information to this case concerning defendants, the employment environment at MCG, and information regarding the Cardiothoracic Department.  In light of the allegations raised by this

Plaintiff, information concerning Dr. Anstadt is material and relevant to this case.

**REQUEST NO. 26**:  **Please produce a list of each and every physician that was ever peer reviewed for any reason or their medical staff privileges were terminated for any reason, including but not limited to practicing medicine below the standard of care, including the name, title, business address, and business telephone number of each and every physician that was peer reviewed, each and every reason why each and every physician was peer reviewed, and the name, title, business address, and business telephone number of each and every person that sat on each and every peer review committee of each and every physician at the Medical College of Georgia, to include any peer review of physicians at the Medical College of Georgia who also practiced at the Veterans Administration in Augusta, Georgia including each and every document and thing used to respond to Interrogatory No. 26**

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks discovery of information regarding individuals other than surgeons who were members of the Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/ Medical College of Georgia on the grounds such requests are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.  Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further

objects on this ground.

Documents in MCG Health's possession or custody to which these privileges apply are indicated in MCG Health's Privilege Log produced in conjunction with this response.

**Plaintiff's Argument**:  Plaintiff responds to Defendant's objection to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Request 7 above, and further states that while Defendant states in its referenced response to Plaintiff's Interrogatory 2 that 633 physicians are members of the MCG medical staff, and a response would encompass all 633 physicians; nevertheless, in reality records for all 633 physicians would not be involved here, because the Plaintiff is seeking information on only those that have been peer reviewed.  The information is relevant to Plaintiff's disparate treatment claims to show that other MCG physicians have had worse professional histories than that of the Plaintiff while at MCG, yet they received different treatment.  Plaintiff was not promoted and was terminated from employment, and it would be most relevant to this case and in rebutting Defendant's denials of disparate treatment to show less qualified nonminority physicians at MCG were treated more favorably than the Plaintiff.  See Arguments and Citation of Authorities as to why the cited State privileges are not applicable in this case.

**REQUEST NO. 27**:  **Please specifically produce any and all letters, memorandum, peer review documents, ad hoc peer review documents, minutes, and writings of any kind that touch upon and deal with the circumstances concerning the list of peer reviewed physicians named in Request No. 30, including all documents and things that were used to respond to Interrogatory No. 6 and Interrogatory No. 13.**

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks discovery of information regarding individuals other than surgeons who were members of the

-42-

Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/ Medical College of Georgia on the grounds such requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege. Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

MCG Health further objects to this request for production on the grounds that it is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument:**    Plaintiff responds to Defendant's objections to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No. 7 and No. 26 above.

**REQUEST NO. 38:**    **Please produce each and every commendation and recommendation of any kind that was received by Dr. Mawulawde while at the Medical College of Georgia including the name, title, business address, and business phone number of each and every person that produced a commendation or recommendation on behalf of Dr. Mawulawde during his entire tenure at the Medical College of Georgia or affiliation of any kind with the Medical College of Georgia.**

-43-

**Defendant's Response**:   MCG Health objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.  Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

In further response MCG Health states that it does not have documents of the type sought by this request for production in its possession or custody, other than the documents which may be contained in Dr. Mawulawde's quality file, which is subject to the privileges asserted above as indicated in MCG Health's Privilege Log, produced in conjunction with these Responses.

**Plaintiff's Argument**:   Plaintiff responds to Defendant's objections to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No. 6, above.  If the information is in Plaintiff's quality (credentialing) file, Plaintiff desires to review said documents as same are relevant to his qualification for promotion and employment.

**REQUEST NO. 40**:  **Please produce each and every document from each and every administrator, emergency room assistant, operating room assistant, and student of Dr. Mawulawde, that comments on the administrator's, emergency room assistant's, operating room assistant's, and student's relationship with and attitude toward Dr. Mawulawde.**

**Defendant's Response**: MCG Health objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.  Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG

Health further objects on this ground.

In further response, MCG Health states that it does not have documents of the type sought by this request for production in its possession or custody, other than documents which may be contained in Dr. Mawulawde's quality file, which is subject to the privileges asserted above as indicated in MCG Health, Inc.'s Privilege Log produced in conjunction with these Responses.

**Plaintiff's Argument**:    Regarding Defendant's privilege objections, Plaintiff adopts its argument set forth in response to Defendant's objections set forth to request for production No. 5 and 6, above.  If any of the requested documents are in the Plaintiff's file referenced in Defendant's objection, same should be produced as relevant to the discrimination claims as said documents relate to his professional competency.

**REQUEST NO. 46:**   **Please produce each and every formal and  informal EEOC complaint against a physician at the Medical College of Georgia, including the name, title, business address, and business telephone number of each physician said to have caused the complaint, and the name of each and every person that played any role in any formal and informal EEOC proceeding, including the name, title, business address, and business telephone number of each and every person that played any role in any formal and informal EEOC proceeding, the reason for each and every formal and informal EEOC complaint, the dates that each and every formal and informal EEOC complaint was filed, and all tape recordings, memorandum, notes, letters, minutes and writings of any kind that touch upon, address or deal with any instance of any employee filing a formal and an informal EEOC complaint against a physician, including all documents used to respond to Interrogatory 15.**

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks discovery of information regarding individuals other than surgeons who were members of the

Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/ Medical College of Georgia on the grounds such requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production numbered 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production on the grounds that it is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:   Plaintiff responds to Defendant's objection to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No 7 and 26 above.   The information is relevant to Plaintiff's disparate treatment claims to show that other MCG physicians may have encouraged or tolerated a discriminatory environment which adversely impacted the Plaintiff's promotional opportunities and even his employment.

**REQUEST NO. 47:  Please produce the outcome and/or judgment concerning each and every formal and informal EEOC complaint against a physician listed in Request No. 42.**

**Defendant's Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks discovery of information regarding individuals other than surgeons who were members of the Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/Medical College of Georgia on the grounds such requests are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for

Production numbered 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production on the grounds that it is not relevant is, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:  Plaintiff responds to Defendant's objection to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No 7 and 26 above.  The information is relevant to Plaintiff's disparate treatment claims to show that other MCG physicians may have encouraged or tolerated a discriminatory environment which adversely impacted the Plaintiff's promotional opportunities and even his employment.

**REQUEST NO. 48**:  **Please produce each and every allegation of discrimination of any kind against a physician at the Medical College of Georgia, including the name, title, business address, and business telephone number of each physician said to have discriminated in any manner, and the name of each and every person that played any role in any proceedings regarding the discrimination caused by a physician, including the name, title, business address, and business telephone number of each and every person that played any role in the handling of any allegation of discrimination, the reason for each and every allegation of discrimination, the dates that each and every allegation of discrimination complaint was made, and all tape recordings, memorandum, notes, letters, minutes and writings that discuss each and every discrimination allegation.**

**Defendants' Response**:  MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks discovery of information regarding individuals other than surgeons who were members of the

Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/Medical College of Georgia on the grounds such requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production numbered 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production on the ground that it is outside the scope of Federal Rule of Civil Procedure 34 in that it does not request documents or other tangible things in the possession or custody of MCG Health. Such request is actually an interrogatory, not a request for production, and it should be designated and numbered as such pursuant to Federal Rule of Civil Procedure 33 and the Court's Order of October 6, 2005.

MCG Health further objects to this request for production on the grounds that it is not relevant is, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:    Plaintiff responds to Defendant's objection to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No 7 and 26 above. The information is relevant to Plaintiff's disparate treatment claims to show that other MCG physicians may have encouraged or tolerated a discriminatory environment which adversely impacted the Plaintiff's promotional opportunities and even his employment.

**REQUEST NO. 49: Please produce the outcome and/or judgment concerning each and every allegation of discrimination against a physician listed in Request No. 44.**

**Defendant's Response**:    MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that it seeks

discovery of information regarding individuals other than surgeons who were members of the Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/Medical College of Georgia on the grounds such requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production numbered 11 and Interrogatories numbered 2(a), 2(b) and 2©.

MCG Health further objects to this request for production on the grounds that it is not relevant is, is not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and is served for the improper purpose of harassing the defendant, causing unnecessary delay and leading to a needless increase in the cost of litigation.

**Plaintiff's Argument**:   Plaintiff responds to Defendant's objection to this request by adopting for the purpose of this argument the arguments stated under Plaintiff's response relating to Interrogatory No 7 and 26 above.   The information is relevant to Plaintiff's disparate treatment claims to show that other MCG physicians may have encouraged or tolerated a discriminatory environment which adversely impacted the Plaintiff's promotional opportunities and even his employment.

**REQUEST NO. 60**:   **Please provide each and every report, document, memo, letter, rule, regulation, etc. that outlines, discusses or references the probation of the thoracic surgery section of the Medical College of Georgia, including the name, title, business address and business telephone number of each and every person that was part of each and every committee that placed the thoracic surgery section of the Medical College of Georgia on probation, including every document and thing that was used to answer Interrogatory No. 24.**

**Defendant's Response**:   MCG Health objects to the scope of this request for production to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such

request is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in MCG Health's response to Request for Production 7 and Interrogatories numbered 2(a), 2(b) and 2©

MCG Health further objects to this request for production on the ground that it is outside the scope of Federal Rule of Civil Procedure 34 in that it does not request documents or other tangible things in the possession or custody of MCG health. Such request is actually an interrogatory, not a request for production, and it should be designated and numbered as such pursuant to Federal Rule of Civil Procedure 33 and the Court's Order of October 6, 2005.

Subject to and without waiving this objection, MCG Health states that6 are no documents responsive to Request for Production numbered 60 in its possession or custody.

**Plaintiff's Arguments**:   Contrary to Defendant's contention this request seeks documents pertaining to the probation of the thoracic surgery section of MCG. Said documents are relevant and not overbroad because of Defendant Snell's references during his deposition which indicated that the performance of the cardiothoracic department of MCG was apparently criticized and deficient, being below the national average. The Plaintiff is claiming here that he was subjected to disparate treatment and not promoted, because of his race, when his surgical skills were much more proficient and greater than other doctors who were promoted before him, and who were practicing in the thoracic surgery section of the MCG. Moreover, the performance of supervisory thoracic surgeons in the thoracic surgery section of MCG is relevant when considering Defendant's failure to promote the Plaintiff and in light of his termination from employment when Plaintiff's skills and proficiency were far superior to other nonminority physicians who were employed in the thoracic surgery section and who were promoted ahead of him. Plaintiff further adopts his previous arguments set forth pertaining to request for production No. 7 and No. 26.

**REQUEST NO. 66:** **Please produce each and every separation notice, termination**

letter, and/or letter of resignation regarding Dr. Lionel Zumbro, Jr.'s departure from the Medical College of Georgia as chief of cardiothoracic surgery, including the name, title, business address, and business telephone number of each and every person that authored any separation notice and termination letter.

**Defendant's Response**:  MCG Health objects to this request for production to the extent that it seeks information protected from disclosure by Georgia's peer review privilege, set out in O.C.G.A. § 31-7-133, et seq., and by Georgia's medical review committee privilege, set out in O.C.G.A. 31-7-141, et seq., and by the federal self critical analysis privilege.  Such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and MCG Health further objects on this ground.

In further response, MCG Health states that it does not have documents of the type sought by this request for production in its possession or custody, other than documents which may be contained in Dr. Zumbro's credentialing file, which is subject to the privileges asserted above as indicated in MCG Health, Inc.'s Privilege Log produced in conjunction with these Responses.

**Plaintiff's Argument**:    Regarding Defendant's privilege objections, Plaintiff adopts its argument set forth in response to Defendant's objections set forth to request for production No. 5 above.  Moreover, it does not appear that the documents requested here in any relate to the type of information which the Georgia legislature was intending to protect with the passage of the cited statutes, and the requested documents do not appear to have anything to do with "peer review' or "self-critical analysis."

Plaintiff contends said documents are relevant and material, because Dr. Zumbro worked in the same department as the Plaintiff and he has been extremely supportive of the Plaintiff and it is relevant that Dr. Zumbro's departure or resignation may have related and involved the performance of the CT Section.  Moreover, Defendant Snell stated in his deposition and also as a 30(b)(6) witness

that the CT Section's performance "collectively" was below the national average. The CT Section employed Dr. Zumbro, Dr. Mawulawde, Dr. Mark Anstadt and a Dr. Victor Moore. The information requested may indicate or show disparate treatment and discriminatory acts by the defendants which would be directly related to and relevant to the claims in this case.

## VII.    PLAINTIFF'S INTERROGATORIES AND DEFENDANT'S OBJECTIONS THERETO AND REFUSAL TO RESPOND TO SAME

As noted previously, Defendant has interpreted the various subparts of Plaintiff's interrogatories, and has unilaterally decided which subparts should be separate and discrete from other subparts and from the primary inquiry set forth in each of the Plaintiff's enumerated individual interrogatories. Plaintiff has filed, simultaneously herewith, his original interrogatories and Defendant's served responses which contain objections to each of Plaintiff's interrogatories beyond interrogatory number 7. as being beyond the limit of 25 set in FRCP 33(a). (*See*, Exhibit 7).

For the interrogatories which Defendant has refused to answer, simply on the basis that the number exceeds the limitation of 25 set forth in F.R.C.P. 33(a), it would not be productive nor especially beneficial to the Court to retype each interrogatory here, and simply recite Defendant's response that it is refusing to answer, because of the recalculation caused by the re-designation of the subparts. Defendant's response to the Plaintiff's interrogatories covers 136 pages. It is the Plaintiff's position, as noted in Section B of this brief (pp.17-22) that Plaintiff's counsel's designation of the subparts was proper under the case law cited *supra*, and in light of the Advisory Committee Notes pertaining to the 1993 amendment to FRCP 33 which imposed the 25 interrogatory limit, but which also recognized that details concerning a common theme should be considered a single question. Unfortunately, there is no "bright line" test, and each interrogatory will need to be examined to determine whether Plaintiff's interpretation or Defendant's interpretation as to the relationship of each subpart is correct.

To the extent that Defendant has made additional objections to the interrogatories beyond

Plaintiff's Interrogatory No. 7, said objections will be moot should the Court rule the Defendant's interpretation is correct, and no further answers need to be forthcoming. Should the Court rule that Plaintiff's interpretation of the combination of the subparts is correct, then Defendant will need to answer, and to the extent additional objections were made beyond numerosity only, Plaintiff shall address same below, taking into consideration that the vast majority of the objections which went beyond the numerosity objection focused on just two or three issues. Defendant made no substantive response to any of Plaintiff's Interrogatories beyond Plaintiff's Interrogatory No. 7.

In Defendant's responses to Interrogatories 8 and 9, Defendant raised the objection of numerosity only after breaking those two interrogatories into nine separate interrogatories. In Defendants response to the primary question and subparts of Interrogatory No. 10, (Exhibit 6, p. 32) beyond the numerosity objection, Defendant also objected as follows:

> "MCG Health objects to the scope of this interrogatory to the extent that such interrogatory seeks discovery of information predating July 1, 2000 and to the extent that such interrogatory seeks discovery of information regarding individuals other than surgeons who were members of the section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia Medical College of Georgia on the grounds that such requests are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome for the reasons described more fully in Mr. Snell's responses to Interrogatories numbered 2(a), 2(b) and 2©. (Exhibit 6, pp 32-33)

The reference to the responses to Plaintiff's Interrogatories 2(a), 2(b) and 2© and incorporation of Defendant's stated objections reflects the Defendant's position that discovery which elicits information predating July 1, 2000 is impermissible, because MCG Health states it only began operating the hospitals and clinics of the Medical College of Georgia on July 1, 2000. Thus, Defendant's objections to Plaintiff's interrogatory No. 2 and subparts 2(a), 2(b) and 2© was as follows:

> MCG Health objects to this interrogatory to the extent that it seeks discovery of information predating July 1, 2000 on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible

evidence and overbroad as to time because MCG Health only began operating the hospitals and clinics of the Medical College of Georgia on July 1,2000. Prior to July 1, 2000, MCG Health did not operate the hospitals and clinics of the Medical College of Georgia.

MCG Health further objects to this interrogatory to the extent that such interrogatory seeks discovery regarding individuals other than surgeons who were members of the Section of Cardiothoracic Surgery of the Board of Regents of the University System of Georgia/Medical College of Georgia on the grounds that such request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, overbroad and unduly burdensome in that approximately 633 physicians are members of the MCG Health Medical Staff, and a response to this interrogatory as stated would encompass all 633 physicians. While only those physicians in the Section of Cardiothoracic Surgery are arguably similarly situated to the plaintiff for the purpose of the plaintiffs claims against MCG Health.

Subject to and without waiving these objections, MCG Health states that the Medical College of Georgia is a division of the Board of Regents. The Board of Regents oversees the Medical College of Georgia, and the Medical College of Georgia is not overseen by MCG Health. As described above, office space leased back by the Board of Regents from MCG Health is allocated by the Board of Regents and not MCG Health. Consequently, MCG Health is not aware of any physicians who were required to relinquish or be reassigned office space by the Medical College of Georgia, the dates on which any such action may have occurred or the reasons why any such action may have been required.

(See, Exhibit 6, pp7-8)

Defendant raised this same objection in responses to 2(e), 3(a), (b), ©, (d), (e); 4, 4(a), (b), ©, (d), (e);  5, 5(a), (b), ©, 6, 6(a); 7 © and(d); however, notwithstanding the objection, Defendant still answered.  However, beginning with Interrogatory No. 8, the same objection was made numerous times thereafter, and no substantive answers were provided. (See, response and objection to Plaintiff's interrogatories 10, 11, 12, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25, 26, and 28.  For the same reasons as set forth previously in this brief in arguing that Defendants objection to Plaintiff's Request for Production No. 7 should not be valid,  Plaintiff argues that the fact that MCG Health, Inc. may not have operated the  hospitals and clinics of the Medical College of Georgia prior to July 1, 2000 should  not be relevant to the discovery in a case such as this one where Plaintiff is claiming

disparate treatment on behalf of MCG as well as this Defendant and MGC is still in this case, through the claims against the Board of Regents. Evidence of historical conduct by the allegedly discriminatory entity can be "of significant evidentiary value in discrimination cases."Williams v. City of Dothan, 745 F.2d 1406, 1415 (11th Cir. 1984) (citations omitted).[vacating a protective order denying access to past information]. Even evidence of earlier discriminatory conduct that is time-barred is "entirely appropriate to help prove a timely claim based on a subsequent discriminatory conduct." Mattewson v. National Automatic Tool., 807 F.2d 87, 91 (7th Cir. 1986); see also, Trevino v. Celanese Corp, 701 F.2d 397,405 (5th Cir. 1983); Cormier v. PPG Industries, 452 F. Supp. 594, 595 (W.D. La. 1978). It is well within the Court's discretion to allow what it deems a reasonable time frame for discovery of a defendant employer's practices. See, Robbins v. Camden City Bd. of Ed., 104 F.R.D. 49, 55 (D.N.J. 1985); Finch v. Hercules, Inc., 149 F.R.D. 60, 64 (D. Del. 1993). "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. . . " United States v. Nixon, 418 U.S. 683, 709 (1974). Full discovery is favored whenever possible. *See, e.g.* Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1546-47 (11th Cir. 1985). As previously discussed, a plaintiff asserting claims involving remedial anti-discrimination statutes such as Title VII and 42 U.S.C. § 1983 should be allowed ample discovery regarding alleged violations of the Plaintiff's guaranteed rights.

Defendant has also interjected the "peer review" privilege objection to numerous interrogatory subparts. (See, Defendant's objections to Interrogatories 14(h), (I) 15 (f); 17 (a) and (b), 25(k), and 26(a) through (f). In response to these objections, Plaintiff adopts the arguments made heretofore in this brief as to why the "peer review," "medical review" and "self-critical analysis" privilege should not be applicable here in this type of civil rights case.

Of course Defendant has also raised generalized objections of relevance, unlikeliness to lead to discovery of admissible evidence, overbroadness, and whether certain responses would place an

undue burden upon the Defendant. (See, objections to Plaintiff's Interrogatory Numbers 10 and

10(a), 16 (b) and ©; 20 and 20 (a) through (f); 20 (I) through (m); 21 (a), (b), ©, (e), (f), and 23(l).

Plaintiff submits that these objections are unmeritorious, and that the Plaintiff should be granted

broad leeway to gain access to the information which is needed to prosecute this case.

## V. CONCLUSION

In light of the foregoing, Plaintiff's motion to compel as to requiring that the defendant MCG

Health Inc., responds fully and completely to discovery questions and requests seeking information

that deals with matters of the performance of similarly situated physicians at MCG and MCG Health

Inc., should be granted and Plaintiff should be permitted to discover any and all information that

may support the allegations in his Complaint.

Respectfully submitted

George W. McGriff
Georgia State Bar No. 493225

Nicholas G. Dumich
Georgia State Bar No. 232650

Attorneys for Plaintiff

GEORGE W. McGRIFF & ASSOCIATES
1774 CENTURY BLVD. N.E.
ATLANTA, GA 30345-3312
Ph: (404) 325-2755
Fax: (404) 325-2757

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

KWABENA MAWULAWDE, M.D.                          )
                                                )
        Plaintiff,                              )
                                                )
    vs.                                         ) CIVIL  ACTION
                                                ) FILE NO. 1:05-CV-99
BOARD OF REGENTS OF THE UNIVERSITY SYSTEM       )
OF GEORGIA; MEDICAL COLLEGE OF GEORGIA;         )
DANIEL W. RAHN, M.D., Indiv. and in his Official Capacity as  )
President, Medical College of Georgia; DAVID STERN, MD.,   )
Indiv., and in his Official Capacity as Dean, School of Medicine,  )
Medical College of Georgia; and DON SNELL, Indiv. and in his  )
Official Capacity as President and CEO, MCG Health, Inc.,   )
                                                )
        Defendants.                             )
                                                )

## CERTIFICATE OF SERVICE

This is to certify that I have caused a copy of the foregoing, Plaintiff's Motion to Compel

Discovery Responses to Interrogatories, Request for Production of Documents and Responses to

Deposition Questions, upon opposing counsel by depositing a copy of the same in the U.S. Mail

with adequate postage affixed thereon, properly addressed as follows:

ALANA HEATON, Esq. & JAMES B. ELLINGTON, Esq.
HULL, TOWILL, NORMAN, BARRETT & SALLEY
SunTrust Bank Building, Seventh Floor
801 Broad Street
Augusta, Georgia 30901

This 21st day of February 2006.

Respectfully submitted,

GEORGE W. McGRIFF
Georgia Bar No. 493225
Attorney for Plaintiff

GEORGE W. McGRIFF & ASSOCIATES
Century Lake Office Park
1774 Century Boulevard, NE
Atlanta, Georgia 30345-3312
(404) 325-2755