# ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2007 AUG 24 P 3 24

CLERK

KWABENA MAWULAWDE, M.D.,     *
    *
       Plaintiff,     *
    *
v.     *     CV 105-099
    *
BOARD OF REGENTS OF THE     *
UNIVERSITY SYSTEM OF GEORGIA,     *
et al.,     *
    *
       Defendants.     *

## ORDER

At issue in the present case is whether and to what extent discovery should be reopened in light of the Eleventh Circuit's decision in Adkins v. Christie, 488 F.3d 1324 (11th Cir. 2007).[1] The parties have thoroughly briefed this issue and presented oral argument before both the undersigned and the United States Magistrate Judge. Transcripts of both hearings are now part of the record. (Doc. nos. 239 & 240.) Also pending are Plaintiff's objections to the Magistrate Judge's Order of July 9, 2007. (Doc. no. 236.) The Court has reviewed the arguments of counsel, both oral and written, as well as the entire record in this case. For the sake of brevity, the Court assumes familiarity by the parties with the underlying factual allegations and procedural history of this case.

## I. BACKGROUND

In both oral and written argument, Plaintiff's counsel has urged: (1) the vacatur *in*

---

[1] In Adkins, the Eleventh Circuit held: (1) Georgia's medical peer review privilege does not apply in federal civil rights actions, and (2) the district court erred "in concluding that review of physicians outside Adkins' department and beyond the five-year [period preceding Adkins's suspension] was not relevant." 488 F.3d at 1330.

*toto* of the Court's prior discovery orders in this case, and (2) an essentially unbounded renewal of the discovery period.[2] In this regard, Plaintiff argues that, under Adkins, he is entitled to university and hospital-wide discovery, without regard to whether the discovery is aimed at similarly-situated individuals. (July 18, 2007 Status Conference Tr. at 28-29; doc. no. 238 at 12.) To illustrate, at oral argument Plaintiff's counsel urged that information regarding whether "the janitor was discriminated against" should be discoverable in this case. (Id.) Plaintiff has since moderated his rhetoric. In his most recent filing, Plaintiff requests:

> With respect to each of the following categories of persons (physician faculty members[3] employed at the Medical College of Georgia from January 1, 1993 to the present), Plaintiff seeks the following information: Personnel Files, Credentialing Files, EEO Files, and Payroll Records.
>
> 1. Faculty promoted to Department Chief within the Medical College of Georgia.
> 2. Faculty promoted from Part Time to Full Time.
> 3. Faculty promoted from Full Time without Tenure to Full Time with Tenure.
> 4. Faculty initially hired with Tenure.
> 5. Faculty initially hired Full Time.
> 6. Faculty initially hired Part Time.
> 7. Black or African American Faculty.
> 8. Faculty who have been terminated.
> 9. Faculty who have resigned.
> 10. Faculty who have performed academic research duties while employed at the Medical College of Georgia.
> 11. Information sought from Duke University[4] regarding Dr. Landolfo, Dr. St. Louis, and Dr. Anstadt.

---

[2](See doc. no. 218 at 2, 4; doc. no. 220 at 19; doc. no. 236; doc. no. 238; July 18, 2007 Discovery Hearing Tr. at 15, 19; July 18, 2007 Status Conference Tr. at 8-9, 28-31, 33-36.)

[3]At first glance, one might suppose that Plaintiff has limited the discovery sought entirely to "physician faculty members." (See doc. no. 238 at 12, 15.) However, such an assumption would not be accurate. Rather, Plaintiff believes he is entitled to "*initial* discovery" regarding all physician faculty members, with leave "to seek broader discovery" regarding employees "outside of this category" at a later date. (Id. (emphasis added).)

[4]To the extent Plaintiff requests discovery from Duke University, such issue is a matter for the Middle District of North Carolina, not this Court.

(Doc. no. 238, Ex. A.)

Before addressing these requested categories of discovery more specifically, the Court briefly summarizes the discovery orders to which Plaintiff takes exception. On October 6, 2005, the Magistrate Judge denied Plaintiff's request "'to propound 40 interrogatories to each individually named Defendant and 45 interrogatories to each business entity named as a Defendant.'" (Order of Oct. 6, 2005 at 1 (quoting doc. no. 11 at 3).) The Magistrate Judge reasoned: (1) absent an affirmative showing of the need for expanded discovery, the "usual discovery limits, as provided by the Federal Rules of Civil Procedure and this District's Local Rules," should apply; and (2) Plaintiff would not be allowed additional interrogatories where he had "not yet exhausted the number of discovery requests allowed by the applicable rules nor actually served *any* discovery on Defendants." (Id. at 2.) When Plaintiff objected to the October 5th Order, the Honorable Dudley H. Bowen, Jr., United States District Judge,[5] affirmed the Magistrate Judge's Order, concluding, "Plaintiff must attempt to use some of the 100 interrogatories and requests for admissions allowed by the Rules before asking for more."[6] (Order of Nov. 15, 2005 at 2.)

Plaintiff did not take up the Court's invitation to "ask[] for more" after exhausting the discovery allowable under the Rules--instead, Plaintiff deliberately disobeyed the Court's instructions by initially serving 30 numbered interrogatories on each Defendant. Plaintiff also attempted to circumvent the Court's orders through the artful labeling of interrogatory

---

[5] The captioned matter was reassigned to the undersigned on February 26, 2007. (See Order of Feb. 26, 2007.)

[6] Of note, this approach has been taken by other district courts within this circuit. See, e.g., O'Connor v. Kawasaki Motors Corp., U.S.A., 699 F. Supp. 1538, 1546-47 (S.D. Fla. 1988) (requiring the plaintiff "to streamline his interrogatories" and to demonstrate "good cause" before seeking leave to propound extra interrogatories).

"subparts." On February 23, 2006, Plaintiff filed an exhaustive motion to compel answers to these interrogatories and other discovery requests. (Doc. no. 73.) *Inter alia*, Plaintiff sought: (1) discovery regarding the treatment afforded nearly every patient in the Cardiothoracic Surgery Section; (2) all documents relating in any way to Plaintiff's employment; (3) all documents pertaining in any way to the employment of Cardiothoracic Surgery Section members Drs. Kevin Landolfo, Mark Anstadt, and Lionel Zumbro; (4) all peer review and credentialing materials regarding Drs. Landolfo and Anstadt; (5) information regarding all lawsuits that have *ever* been filed against Defendants; (6) information regarding "each and every physician that was ever peer reviewed for any reason" (id. at 41); (7) information regarding "each and every formal and informal EEOC complaint against a physician at the Medical College of Georgia" (id. at 45); and (8) information regarding any allegation of discrimination that has ever been made against a physician at the hospital. Of note, although much of the information sought would have been in the hands of the State Defendants, the above discovery was directed at the Private Defendants, and the motion to compel sought an order compelling discovery responses from the Private Defendants.

The Private Defendants objected, primarily for the following reasons: (1) Plaintiff sought information they did not possess; (2) Plaintiff sought health information protected by the Health Insurance Portability and Accountability Act of 1986 ("HIPAA"); (3) Plaintiff sought material protected by Georgia's medical peer review privilege; (4) Plaintiff's attempts to seek discovery predating 2000 and from outside the Cardiothoracic Surgery Section were irrelevant, overly broad, and overly burdensome; and (5) Plaintiff had patently ignored the Court's prior orders by submitting 30 numbered interrogatories per party and artfully labeling separate interrogatories as "subparts."

4

On April 27, 2006, the Magistrate Judge granted in part and denied in part Plaintiff's motion to compel. (Order of Apr. 27, 2006.) Before summarizing that Order, the exceedingly broad scope of the discovery sought should be fully recognized. Plaintiff sought "broad leeway" to conduct discovery with *no* temporal limits. (See doc. no. 73 at 27, 56.) Furthermore, as Defendants pointed out, Plaintiff sought peer review materials encompassing every physician with privileges to practice at the hospital and clinics affiliated with the Medical College of Georgia. At the time Plaintiff filed his motion to compel, 633 physicians had such privileges. (See doc. no. 97 at 13.) Thus, Plaintiff's desired discovery included doctors who were neither surgeons, faculty members, nor even employees of the Medical College of Georgia, and thus could in no way be considered similarly situated to himself.

The Magistrate Judge: (1) concluded that it was "apodictic that the Court cannot compel a party to produce documents that it does not possess" (Order of Apr. 27, 2006 at 13 n.6), (2) held that the state peer review privilege applied to this case (id. at 18), (3) overruled Defendants' objections to discovery regarding physicians outside the Cardiothoracic Surgery Section (id. at 14-16), (4) ordered the parties to submit a joint proposed protective order to alleviate Defendants' HIPAA-related concerns (id. at 20), (5) limited discovery to the period postdating March 1, 1997 (id. at 14), and (6) noted Plaintiff's disobedience of the Court's October 6th and November 15th Orders and directed the parties to agree regarding which interrogatories would be answered (id. at 10). More generally, upon issuing these rulings, the Magistrate Judge encouraged the parties to confer and attempt to resolve amicably their remaining disputes. (Id. at 10, 20-21.)

Of particular interest, in rejecting Defendants' attempt to limit discovery to the Cardiothoracic Surgery Section, the Magistrate Judge reasoned:

Here, Health apparently seeks to limit discovery to a four-person section. See CV 104-2953, doc. no. 1, p. 25. To the contrary, Plaintiff is entitled to discovery regarding any "comparable" or "similarly situated" employees. See, e.g., Miller v. Federal Express Corp., 186 F.R.D. 376, 383-84 (W.D. Tenn. 1999)(Title VII case involving allegedly discriminatory discipline of employee). Of note, "comparable" does not mean "identical." Id. In assessing whether individuals are "similarly situated," whether the individuals worked under the "same supervisor" is an important factor to consider. Id. In this case, Plaintiff alleges that the Chairman of the Department of Surgery was responsible for his "direction and supervision." CV 104-2953, doc. no. 1, p. 19.

More generally, Health's attempt to limit discovery to the Cardiothoracic Section generates a distinction without a meaningful difference. Is another surgeon and professor at the Medical College of Georgia not "similarly situated" to Plaintiff merely because he performs operations on legs rather than hearts? Simply put, although the Court agrees with Health that requiring discovery involving "all 633 physicians" who have "privileges to practice at the hospitals and clinics associated with the Medical College of Georgia" would be burdensome, Health has identified no reason to suppose that information regarding surgeons outside Plaintiff's tiny Cardiothoracic Surgery Section cannot be considered relevant to the instant case. Doc. no. 97, p. 13.

That said, a key issue here is that Plaintiff's discovery requests are not aimed with precision at similarly situated employees. Instead, he has phrased his discovery requests in the broadest terms possible, i.e., "each and every physician." Doc. no. 73, p. 41. As the Court has noted, it is fair to expect a plaintiff to narrow a broad request by "identif[ying] particular items within the expansive request" or "provid[ing] a theory of relevance that might narrow the scope of his request." [Wright v. AmSouth Bancorp., 320 F.3d 1198, 1205 (11th Cir. 2003)]. Plaintiff should narrow his request by targeting groups of physicians he believes should be considered "similarly situated" to himself. Plaintiff's approach simply does not adequately frame the discovery sought.

(Id. at 15-16.)

Thus, the Magistrate Judge concluded that discovery in this case should be governed by two key principles: (1) discovery should be aimed at "'the most natural focus of the inquiry,'" which is the "'source of the complained of discrimination'" (id. at 14 (quoting Earley v. Champion Int'l Corp., 907 F.2d 1077, 1084-85 (11th Cir. 1990))); and (2) discovery should target similarly situated individuals (id. at 15-16). The Magistrate Judge

6

thus required Plaintiff to streamline his requests by "identif[ying] particular items within the expansive request" or "provid[ing] a theory of relevance that might narrow the scope of his request." Wright, 320 F.3d at 1205.

Wisely, at this early stage in the case, the Magistrate Judge did not issue final rulings defining the term "similarly situated" or limiting discovery to any particular section or department. Rather, the Magistrate Judge simply refused to require extensive hospital and university-wide discovery regarding physicians who were not surgeons, faculty members, or even employees of Defendants and therefore could not be considered "similarly situated" to Plaintiff. As an aid to the parties, the Magistrate Judge suggested three groups who could be considered similarly situated: (1) faculty members, and (2) surgeons, and (3) employees sharing the same supervisor.

Following the Magistrate Judge's April 27, 2006 Order, the parties entered into an agreement which would govern the course of discovery in this case. The parties agreed: (1) to limit discovery to the period following January 1, 1999, (2) to limit discovery to the Department of Surgery, (3) to limit discovery of individual patient care data to five specific patients, and (4) to submit a consent protective order consistent with HIPAA. (See doc. nos. 120-21.) Plaintiff has repeatedly attempted to renege on this agreement ever since. The Magistrate Judge steadfastly refused to allow this, and it is this refusal which in fact gives rise to the bulk of Plaintiff's current complaints.

On November 29, 2006, the Magistrate Judge refused to set aside the consent protective order, denying Plaintiff's request to compel production of personally identifiable patient information. (See Order of Nov. 29, 2006 at 3.) On April 17, 2007, the Magistrate Judge refused to allow Plaintiff to discover information regarding 48 cardiothoracic surgery

7

patients. (See Order of Apr. 17, 2007.) Finally, in his July 9, 2007 Order, to which

objections are presently pending, the Magistrate Judge sanctioned Plaintiff for filing a

motion to compel production of these additional patient records. (See Order of July 9,

2007). Having summarized the pertinent discovery orders, the Court turns to Plaintiff's

proposed discovery.

## II. DISCUSSION

### A.      Rule 56(f) or Rule 26?

Initially, the Court addresses the impact of the procedural posture of this case upon

the Court's resolution of these issues. One might reasonably suppose that Defendants'

pending summary judgment motions place this case within the ambit of Rule 56(f), which

allows for discovery prior to consideration of a summary judgment motion in order to give

the non-movant a just opportunity to marshal "facts essential to justify the party's

opposition." Fed. R. Civ. P. 56(f). As a general rule, once a motion for summary judgment

has been filed, the non-movant has no absolute right to conduct discovery; rather, he must

show that he "has not had the opportunity to discover information that is essential to his

opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).

In this regard, the Federal Rules of Civil Procedure plainly contemplate

consideration of summary judgment motions prior to the completion of discovery which

would otherwise be permitted under the Rules. See, e.g., Leigh v. Warner Bros., Inc., 212

F.3d 1210, 1219 (11th Cir. 2000). To illustrate, a defendant may move for summary

judgment before an answer has been filed or *any* discovery has been conducted.[7] Once a summary judgment motion has been filed, the non-movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions." Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir. 1989). In other words, under Rule 56(f), the non-movant must set forth "with particularity" the facts he expects to discover and how those facts will create a genuine issue of material fact. Harbert Int'l, Inc. v. James 157 F.3d 1271, 1280 (11th Cir. 1998).

The Court has "wide discretion" to deny discovery under Rule 56(f) absent an affirmative showing that additional discovery will enable the non-movant to generate a genuine dispute of fact. Id. Furthermore, Rule 56(f) does not protect a litigant who has been dilatory in pursuing discovery.[8] More generally, "'[w]here a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied.'" Iraola & CIA, S.A.

---

[7] See Fed. R. Civ. P. 56(b) (allowing defendant to move for summary judgment "at any time"); see also Yelder v. U.S. Dep't of Defense, 164 Fed. Appx. 914, 914 n.1 (11th Cir. Jan. 31, 2006) (*per curiam*) (holding that "the district court did not abuse its discretion in granting summary judgment prior to the filing of an answer and before discovery given that Yelder did not file a Rule 56(f) motion or demonstrate how discovery would have enabled her to rebut the Department of Defense's showing of an absence of a genuine issue of material fact"); Marquez v. Cable One, Inc., 463 F.3d 1118, 1120 (10th Cir. 2006) ("'Courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained.'") (quoting INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 404 (6th Cir. 1987)); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2718 at 301 (3d ed. 1998) ("A defending party is not required by the rule to file an answer before moving for summary judgment.").

[8] See Barfield, 883 F.2d at 931-33 & n.11 (upholding the denial of a Rule 56(f) motion where "the plaintiff had ample time and opportunity for discovery, yet failed to diligently pursue his options" and noting that the "most common situation in which [Rule 56(f)] will not be applied to aid a nondiligent party arises when the nonmovant has complied with Rule 56(f) but has failed to make use of the various discovery mechanisms that are at his disposal") (internal citations and quotation marks omitted); see also 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 429-31 (3d ed. 1998) ("[Rule 56(f)] will not be applied to aid a party who has been lazy or dilatory . . . a request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery.").

v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (quoting Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir. 1991)). Moreover, the Court does not abuse its discretion in denying additional discovery unless it can be shown that the ruling results in "'substantial harm'" to a party's case. Id. at 1286 (quoting Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 493 (11th Cir. 1997)).

Here, Plaintiff makes no attempt to make the particularized showing necessary for discovery under Rule 56(f); rather, relying on Adkins, Plaintiff argues that discovery has been unduly restricted throughout the pendency of this case. (See, e.g., July 18th Discovery Hearing Tr. at 15, 19.) Thus, Plaintiff purportedly seeks all

> information relevant, not only to support his opposition to the defendants'
> motions for summary judgment, but also information that may enable him to
> discover any available evidence that would support his claims that would be
> presented to a jury when and if the Court denies the defendants' motions for
> summary judgment. Therefore, Plaintiff is seeking discoverable evidence
> pursuant to Rule 26 of the Federal Rules of Civil Procedure, not Rule 56(f).

(See, e.g., doc. no. 238 at 1.)

This approach has merit, in so far as it goes. To the extent Plaintiff has been erroneously denied discovery to which he is entitled under Adkins, he will be afforded relief. This does not, however, make the procedural posture and history of this case irrelevant. Plaintiff originally filed his complaint in the Superior Court of Fulton County, Georgia, on September 2, 2004. After several extensions and an eight-month stay of discovery while various discovery disputes were resolved, discovery was finally closed on March 9, 2007. (See Order of Feb. 28, 2007.)

The fact of the matter is that the parties have conducted extensive discovery and filed voluminous evidence and briefing pertaining to Defendants' motions for summary judgment. The docket reflects 244 separate entries since this case was transferred to this

Court from the Northern District of Georgia on July 6, 2005. Substantial judicial resources, not to mention the time and effort of the parties, have been expended. As the Magistrate Judge correctly noted, it is the Court's duty "'to secure the just, speedy, and inexpensive determination of every action.'" (July 18, 2007 Discovery Hearing Tr. at 32 (quoting Fed. R. Civ. P. 1).) Now is not the time for, as the Magistrate Judge put it, a discovery "do-over." (Id. at 33.)

But that is exactly what Plaintiff now requests. Plaintiff urges that discovery be reopened with no limit "beyond relevance." (Doc. no. 238 at 2.) Furthermore, in addition to the categories of discovery delineated in his most recent brief, Plaintiff also seeks unspecified "follow up" discovery. (Doc. no. 218 at 4; doc. no. 238 at 2.)

## B. Required Adherence to Rule 33

In this regard, Plaintiff argues that, by requiring him to adhere to the discovery limits imposed by Fed. R. Civ. P. 33, the Court unreasonably restricted the scope of discovery *ab initio*. (See doc. no. 220 at 7; July 18th Status Conference Tr. at 33.) Neither Adkins nor any other case stands for the proposition that a civil rights plaintiff is entitled to serve and compel answers to as many interrogatories as he desires. Although "leave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2)," the purpose of Rule 33's 25-interrogatory limit is "to provide judicial scrutiny before the parties make potentially excessive use of this discovery device." Fed. R. Civ. P. 33 advisory committee's note (1993).

Merely arguing *a priori* that civil rights cases are complex and necessitate exceeding Rule 33's limits (see doc. nos. 11 & 24; see also July 18th Status Conference Tr. at 33) does not provide the opportunity for judicial management and streamlining of discovery

11

contemplated by the Rule. More importantly, Plaintiff never took up the Court's invitation to "ask[] for more" after exhausting the discovery allowable under the Rules--instead, as discussed *supra*, Plaintiff deliberately disobeyed the Court's instructions. This fact should be neither forgotten nor minimized. Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1208 (11th Cir. 1985) ("As a fundamental proposition, orders of the court '*must be obeyed*.'"). Having failed to pursue the avenue for additional discovery plainly available under the auspices of the Court's October 6, 2005, and November 15, 2005 Orders, Plaintiff cannot now fairly argue that those rulings unreasonably restricted the scope of discovery. There being no error, the Court's rulings requiring adherence to Fed. R. Civ. P. 33 will not be disturbed.

## C. Required Adherence to the Parties' Agreement to Limit Discovery

### 1. Plaintiff's Agreement to Limit Discovery to the Department of Surgery

Neither will Plaintiff be allowed to renege on his agreement to limit discovery. First, the Court addresses Plaintiff's agreement to limit discovery to the Department of Surgery. To the extent Plaintiff may argue that the Magistrate Judge's April 27, 2006 Order imposed such a limit (see July 18th Status Conference Tr. at 31), such an argument would be spurious. As explained *supra*, the Court never limited discovery to any section or department.[9] The Magistrate Judge simply concluded that Plaintiff's original discovery request was overbroad, leaving it to Plaintiff to tailor the scope of his request. The parties then reached their own solution to the issue. Plaintiff had ample opportunity during the

---

[9]In this regard, it should be pointed out that although the Magistrate Judge's April 27, 2006 Order mentioned the Department of Surgery, it did so in rejecting Defendants' attempt to limit discovery to the Cardiothoracic Surgery Section, not in defining the outer limits of those individuals who could be considered "similarly situated" to Plaintiff. If anything, the Magistrate Judge set the Department of Surgery as a "floor", not a ceiling.

nearly three-years' worth of discovery conducted in this case to request the faculty-wide discovery he now seeks. If Plaintiff's own conduct and his agreement with Defendants have hampered his ability to mount a case, he has only himself to blame.

In this regard, the Court is aware of Plaintiff's argument that the Magistrate Judge erred in directing the parties to confer and resolve many of their discovery disputes rather than issuing a ruling which fully defined the scope of discovery. (Doc. no. 236 at 6 (quoting Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 (11th Cir. 1997)).) The Magistrate Judge acted properly and well within his discretion. The Magistrate Judge thoroughly explained his reasoning, providing explicit rulings regarding the temporal scope of discovery, the need for a protective order, and the applicability of the state-law peer review privilege (the sole ruling of the Magistrate Judge undermined by Adkins). With respect to those disputes not resolved by the April 27, 2006 Order, the Magistrate Judge had broad discretion to do what he did here: provide the parties with sufficient guidance to foster resolution of their disputes without additional court intervention. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1988 n.13 (2007) (Stevens, J., dissenting) ("[T]he Federal Rules contemplate that pretrial matters will be settled through a flexible process of give and take, of proffers, stipulations, and stonewalls."). The Rules not only encourage, but require parties to attempt to resolve discovery disputes without court intervention. See Fed. R. Civ. P. 26(c) & 37(a)(2). Furthermore, notwithstanding the parties' prior technical compliance with the Rules' "meet and confer" requirements, the Court has ample authority "to demand that the parties do something that, in [the Court's] judgment, they have yet to do: cooperate." Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 11 (D.D.C. 2004). Put plainly, the Magistrate Judge acted fairly and

13

practically; he did not strong-arm Plaintiff into agreeing to onerous discovery restrictions.

Of course, underlying Plaintiff's argument is his apparent view that Adkins mandates institution-wide discovery in all civil rights cases. Adkins provides no such bright-line rule, and the Magistrate Judge did not err in concluding that university and hospital-wide discovery was inappropriate. The law "do[es] not mandate broad discovery in all university discrimination suits." Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 398 (5th Cir. 2000). Rather, "discovery orders are fact-based and must be reviewed in the context of the claims at issue." Id. As the Magistrate Judge concluded, discovery may be fairly limited to similarly-situated individuals and to "the relevant unit of decision-making." Id.

Adkins does not hold otherwise. Adkins, unlike the failure-to-promote case *sub judice*, was an employee discipline case. Adkins had been disciplined for violating "hospital-wide rules" at the Houston Medical Center. 488 F.3d at 1331. Thus, Adkins needed "to compare the general standard that hospital physicians were held to in order to establish that his punishment was excessive." Id. Thus, constraining discovery to "[t]he limited number of physicians in the Department of Surgery [did] not allow Adkins to place his case in the context of larger disciplinary processes of the hospital." Id. In other words, for the purposes of Adkins's suit, *all* the doctors at the Houston Medical Center were subject to the same work rules and therefore similarly situated.

In contrast, Plaintiff clearly seeks discovery with little conceivable relevance to the facts at issue in this case--the relative qualifications and treatment of those similarly situated to Plaintiff. In this regard, even if the Magistrate Judge *had* limited discovery to the Department of Surgery, such a limit, while superficially similar to the discovery constraint

disapproved in <u>Adkins</u>, would not have been an abuse of discretion given the unique facts

of this case. In contrast to the "limited number of physicians in the Department of Surgery"

at the Houston Medical Center, there are currently over one-hundred faculty members in the

Department of Surgery at the Medical College of Geogia.[10] Thus, the parties' agreement to

limit discovery to the Department of Surgery is quantitatively different from the limit

disapproved in <u>Adkins</u>.

Quite aside from the sheer volume of discovery available within the Department of

Surgery, the specific facts of this case also render the effect of the parties' agreement to

limit discovery qualitatively different from the district court's ruling in <u>Adkins</u>. Unlike the

plaintiff in <u>Adkins</u>, Plaintiff complains not of the unequal application of institution-wide

work rules, but of individual employment decisions which Plaintiff contends were

discriminatory. Although high-ranking officials, including Dr. David Stern, the Dean of the

School of Medicine, Dr. Daniel Rahn, the President of the Medical College of Georgia, and

Don Snell, the President and CEO of MCG Health, Inc., participated in and ultimately

concurred in the decision to hire Dr. Landolfo rather than Plaintiff as Chief of the

Cardiothoracic Surgery Section, the vast majority of employment-related decisions at the

Medical College of Georgia are made principally by officials at the section and department

levels, often with the input of committees appointed and convened by the appropriate

---

[10]This information is available at the Medical College of Georgia's website, www.mcg.edu. The Court may take judicial notice of the Medical College of Georgia's website, which constitutes a matter of public record. <u>See</u> Fed. R. Evid. 201(b)(2); <u>Coleman v. Dretke</u>, 409 F.3d 665, 667 (5th Cir. 2005) (holding that district court could take judicial notice of state agency website); <u>In re Everglades Island Boat Tours, LLC</u>, 484 F. Supp. 2d 1259, 1261 (M.D. Fla. 2007) (taking judicial notice of government website); <u>Mitchell v. Nix</u>, CV 105-2349, 2007 WL 779067, at *4 (N.D. Ga. Mar. 8, 2007) (taking judicial notice of state agency website); <u>Vlahos v. Schroeffel</u>, CV No. 02-CV-0139DLI, 2006 WL 544444, at *5 (E.D.N.Y. Mar. 6, 2006) (taking judicial notice of university hospital's website); <u>Hendrickson v. eBay, Inc.</u>, 165 F. Supp. 2d 1082, 1084 (C.D. Cal. 2001) (taking judicial notice of defendant's website).

15

section or department head.[11]

In pursuing "initial discovery" regarding all physician faculty employed by the Medical College of Georgia from 1993 onward (see doc. no. 238 at 15), Plaintiff's instant request encompasses well over 1,000 people (see July 18th Status Conference at 10). These individuals come from a variety of different sections and departments, have different supervisors, are subject to the employment decisions of different officials, and possess widely differing qualifications. Also of note, the standards and procedures governing faculty employment decisions vary greatly depending upon the particular employee's "track," tenure status, and whether the employee works on a full or part-time basis. (See, e.g., Pl.'s Dep. at 238, Goldstein Aff. ¶¶ 13, 24-30; Hall Aff. ¶¶ 37-41.)

Although Plaintiff argues that he should be allowed to discover evidence of intentional discrimination or "disparate impact" throughout the university and its affiliated hospitals, he has provided scant reason to believe that faculty outside the Department of Surgery may be considered similarly situated to himself or that discovery outside that department will reveal information regarding "the relevant unit of decision-making" in this case. The Court will not reopen discovery at this late date simply to indulge Plaintiff's speculative arguments, particularly in light of Plaintiff's complete failure to pursue such discovery during the lengthy discovery period afforded the parties in this case.

Put plainly, Plaintiff had the opportunity to seek the faculty-wide discovery he now desires prior to the close of discovery in this case. Instead, as has already been discussed at length, Plaintiff himself agreed to limit discovery to the Department of Surgery. Plaintiff

---

[11](See Goldstein Dep. at 40, 44-46, 95, 104, 107; Snell Aff. ¶ 49; Rahn Dep. at 66, 68, 86, 116, 132, 152-53, 179; Stern Dep. at 34-35, 132-34, 149-51, 156-158, 160-64, 180, 190-91, 220, 254, 268-69; Howell Dep. at 47, 51, 94-95, 111, 113-14, 120, 127, 131, 146; Gadacz Dep. at 19-20, 45, 49, 67-68, 98, 100, 135, 175; Howell Dep. Ex. P-1.)

16

made this choice defining the scope of discovery freely, and Adkins provides no basis for allowing Plaintiff to renege on this agreement.

### 2. Plaintiff's Agreement to Limit the Temporal Scope of Discovery

The Court likewise declines to displace the Magistrate Judge's limit on the temporal scope of discovery. To begin, it should be remembered that Plaintiff agreed to a more restrictive limit (the five-year period predating the filing of the complaint) than that imposed by the Magistrate Judge (the seven-year period predating the complaint). It is disingenuous for Plaintiff now to attempt to set aside his bargained-for exchange with Defendants.

Moreover, the Magistrate Judge's limits on the temporal scope of discovery were reasonable, even in light of Adkins. Admittedly, the limitation imposed by the Magistrate Judge was superficially similar to the temporal limit disapproved in Adkins. In Adkins, the district court limited discovery to the five years preceding Adkins's suspension; the Eleventh Circuit concluded that he was entitled to a seven-year discovery limit. 488 F.3d at 1330. Similarly, in the instant case, the Magistrate Judge allowed Plaintiff to reach back five years prior to his termination and seven years prior to the filing of the complaint. Nevertheless, in contrast to the limit disapproved in Adkins, the Magistrate Judge enabled Plaintiff to inquire into events predating his employment at the Medical College of Georgia by two years.

It is Plaintiff's ostensible view that Adkins stands for the proposition that civil rights plaintiffs are always entitled to discover records predating all the actions about which they complain by a full seven years. Nevertheless, "'[g]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.'" Cf. Chrysler Intern. Corp. v. Chemaly, 280 F.3d 1358, 1361 n.5 (11th Cir. 2002) (declining to extend a

prior discovery ruling to a subsequent case which involved "materially different" facts) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.)). The Court is of course aware of the Eleventh Circuit's references in Adkins "'to the liberal spirit of the [Federal Rules],'" and the need to afford Adkins wide "latitude" to conduct relevant discovery. Adkins, 488 F.3d at 1331 (quoting Burns v. Thiokol Chem. Corp., 483 F.2d 300, 305 (5th Cir. 1973)). However, before the Eleventh Circuit's conclusions in Adkins can be applied to the instant case in any principled or practical way, it is essential to consider the context in which those conclusions were reached.

Adkins alleged that, when he was hired, he was subjected to "an unusually high level of review for new physicians." Adkins, 488 F.3d at 1326. By imposing a five-year limit on discovery, the district court precluded Adkins from conducting discovery regarding the first two years of his seven-year stint at the hospital. Id. at 1327. Therefore, Adkins was precluded from developing a record regarding his disciplinary history and showing that he was singled out for heightened scrutiny and peer review the moment he was hired.

Of note, the defendants in Adkins had placed the early days of Adkins's tenure directly at issue by asserting that he was suspended based on the totality of "his performance during his tenure." Id. at 1330. Indeed, the Adkins defendants alleged that Adkins's job performance progressively worsened throughout his tenure. See id. at 1326-27. Finally, it is noteworthy that the district court completely precluded Adkins from pursuing any discovery predating his hiring and the discriminatory acts about which he complained.

The underlying facts and claims in this case are materially different. Adkins neither automatically answers the "how far back" question in the present case nor establishes a "magic number" governing the scope of discovery in every civil rights case. The question

18

before the Court cannot be resolved in formalistic or mechanistic fashion. Rather, the question is whether the Magistrate Judge exercised his broad discretion in such a manner as to give Plaintiff sufficient opportunity to develop a record regarding his treatment and the treatment of similarly situated employees for "a reasonable number of years *before and after* the alleged discrimination." E.E.O.C. v. Autozone, Inc., 258 F. Supp.2d 822, 831 (W.D. Tenn. 2003) (emphasis added); see also Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 655 & n. 29 (D.Kan. 2004) (same). Adkins does not alter that premise.

In the present case, the Magistrate Judge chose a period predating the alleged acts of discrimination in the complaint by roughly three years. As the Magistrate Judge noted, this decision was in keeping with the normative range:

> "[A]lthough courts have permitted discovery periods as long as eight to ten years, the norm in employment discrimination cases seems to be anywhere between three and five years." [Briddell v. Saint Gobain Abrasives Inc., 233 F.R.D. 57, 60 (D. Mass. 2005)] (citing United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 414 (D. Mass. 1995) (three year window of discovery); Obiajulu v. City of Rochester, 166 F.R.D. 293, 296 (W.D.N.Y.1996) (discovery allowed from three years prior to suit until the time the case was heard); Glenn v. Williams, 209 F.R.D. 282 (D.D.C. 2002) (three year time frame for discovery); [Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 662 (D. Kan. 2004)] (time period of three years prior to discrimination and two years afterwards allowed)).

(Order of Apr. 27, 2006 at 12.) The Magistrate Judge's limit on the temporal scope of discovery was neither clearly erroneous nor an abuse of discretion, and the Court will not set it aside.

## D. The Extent of Plaintiff's Entitlement to Additional Discovery

Having declined to set aside Plaintiff's agreement limiting the scope of discovery, the question remains: to what discovery is Plaintiff entitled? The only aspect of the Magistrate Judge's prior orders invalidated by Adkins is the conclusion that the peer review

privilege applies in federal court. Defendants have already agreed to furnish Plaintiff peer review materials from the Cardiothoracic Surgery Section. To the extent Plaintiff seeks peer review materials postdating January 1, 1999 from the Department of Surgery, he will be allowed to seek this discovery, consistent with the parties' prior discovery agreement.[12] Upon receipt of all peer review materials allowed under this Order, in accord with Fed. R. Civ. P. 30, Plaintiff is free to reconvene any depositions and to conduct any new depositions necessary to pursue any inquiries previously foreclosed by the Magistrate Judge's peer review ruling. In any event, all discovery is to be completed within 60 days of the date of this Order. Thereupon, the parties shall have 15 days to supplement their materials submitted either in support or opposition to summary judgment.

**E.     Plaintiff's Objections to the Magistrate Judge's Order of July 9, 2007**

Finally, the Court **OVERRULES** Plaintiff's objections to the Magistrate Judge's July 9th Order. The Magistrate Judge awarded Defendants their expenses related *solely* to Plaintiff's attempt to compel production of patient records. (Order of July 9th at 15.) This attempt was patently foreclosed by the parties' discovery agreement, discussed at length *supra*. The Magistrate Judge's decision to impose sanctions was not erroneous.


## III.  CONCLUSION

In sum, contrary to Plaintiff's arguments, with the lone exception of access to peer review materials, Adkins does not alter the fundamental validity or fairness of the Court's prior discovery orders. As delineated above, the Court will afford Plaintiff a meaningful opportunity to pursue avenues of discovery foreclosed by the Magistrate Judge's erroneous

---

[12]The parties are **DIRECTED** to submit a consent protective order ensuring the confidentiality of all peer review materials disclosed in this case. See Adkins, 488 F.3d at 1329.

peer review privilege ruling. However, the balance of the Court's prior rulings were based on well-established discovery principles which <u>Adkins</u> did not disturb. Plaintiff had ample opportunity to pursue nearly all of the discovery he now belatedly seeks, and nothing in the Court's prior orders prevented him from doing so.

    **ORDER ENTERED** at Augusta, Georgia, this _____ day of August, 2007.

                            HONORABLE LISA GODBEY WOOD
                            UNITED STATES DISTRICT JUDGE